UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MONICA J. ROGERS,

              Plaintiff,

vs.

              Case No. 2:15-cv-12312

HENRY FORD HEALTH SYSTEM,
a Michigan corporation,

              Hon. Marianne O. Battani

              Defendant.

---

STERLING ATTORNEYS AT LAW, P.C.
Gerald D. Wahl (P26511)
Attorney for Plaintiff
33 Bloomfield Hills Pkwy., Ste. 250
Bloomfield Hills, MI 48304
(248) 644-1500
gwahl@sterlingattorneys.com

VARNUM LLP
Terrence J. Miglio (P30541)
Barbara E. Buchanan (P55084)
Attorneys for Defendant
160 W. Fort Street, Fifth Floor
Detroit, MI 48226
(313) 481-7300
tjmiglio@varnumlaw.com
bebuchanan@varnumlaw.com

---

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**NOW COMES** Defendant, **HENRY FORD HEALTH SYSTEM** ("Defendant"), by and through its attorneys, **VARNUM LLP**, and for its Motion for Summary Judgment states as follows:

1.    In this action, Plaintiff Monica Rogers ("Plaintiff") alleges claims for race discrimination and retaliation under 42 U.S.C. 1981, Title VII and the Elliott-Larsen Civil Rights Act, and age discrimination under the Elliott-Larsen Civil Rights Act.

2.    Pursuant to Fed. R. Civ. P. 56(c), Defendant Henry Ford Health System ("HFHS") is entitled to Summary Judgment on all of Plaintiff's claims, because there is no genuine issue of material fact that:

    a.   Plaintiff cannot establish a *prima facie* case of race or age discrimination under any statute or theory of discrimination; and

    b.   Plaintiff cannot establish a *prima facie* case of retaliation under any statute or theory of retaliation; and

    c.   Plaintiff cannot produce any evidence that Defendant's reasons for any alleged adverse employment action were a pretext for discrimination or retaliation.

3.    Defendant's counsel sought concurrence in the relief sought in this motion from Plaintiff's counsel on April 1, 2016. Concurrence was not given, thus making it necessary to file this Motion.

**WHEREFORE**, Defendant respectfully requests that this Honorable Court grant its Motion for Summary Judgment, dismiss Plaintiff's Complaint in its entirety with prejudice, and award such other relief as the Court deems appropriate.

Respectfully submitted,

VARNUM LLP

By: /s/ Terrence J. Miglio
Terrence J. Miglio (P30541)
Barbara E. Buchanan (P55084)
Attorneys for Defendant
160 W. Fort Street, 5th floor
Detroit, Michigan 48226
(313) 481-7300

Dated: August 1, 2016

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MONICA J. ROGERS,

       Plaintiff,

                                 Case No. 2:15-cv-12312

vs.

                                 Hon. Marianne O. Battani

HENRY FORD HEALTH SYSTEM,
a Michigan corporation,

       Defendant.

---

STERLING ATTORNEYS AT LAW, P.C.     VARNUM LLP
Gerald D. Wahl (P26511)               Terrence J. Miglio (P30541)
Attorney for Plaintiff                Barbara E. Buchanan (P55084)
33 Bloomfield Hills Pkwy., Ste. 250    Attorneys for Defendant
Bloomfield Hills, MI 48304         160 W. Fort Street, Fifth Floor
(248) 644-1500                   Detroit, MI  48226
gwahl@sterlingattorneys.com       (313) 481-7300
                                   tjmiglio@varnumlaw.com
                                   bebuchanan@varnumlaw.com

---

**BRIEF IN SUPPORT OF DEFENDANT'S**
**<u>MOTION FOR SUMMARY JUDGMENT</u>**

## TABLE OF CONTENTS

INDEX OF AUTHORITIES ................................................................................. iii

CONCISE STATEMENT OF ISSUES PRESENTED ................................................. vi

I.     INTRODUCTION ........................................................................................ 1

II.    STATEMENT OF FACTS ............................................................................ 1

      A.    Plaintiff Holds Several Positions In The Human Resources Department Before Being Grandfathered Into A Position Requiring A Bachelor's Degree ........................................................................................... 1

      B.    Plaintiff Exhibits Intimidating And Disruptive Behavior And As A Result, Is Referred To EAP By Her Supervisor Monica Jackson-Lewis ........................... 2

      C.    Plaintiff Claims She Should Be Promoted to Senior OHRD Consultant ............... 3

      D.    Plaintiff Submits A Complaint To Human Resources And An Investigation Is Conducted By The Deputy General Counsel Of HAP ................. 4

      E.    Plaintiff's Erratic Behavior And Threatening Statements Following The Investigation Are Brought To The Attention Of Management by Several Employees, Resulting In Her Being Referred To EAP For The Second Time ........................................................................................... 5

      F.    Plaintiff Has No Evidence That She Was Denied A Promotion Because Of Her Race Or Treated Differently Than Six "White Counterparts" ........................... 7

III.   ARGUMENT ............................................................................................ 12

      A.    Plaintiff Cannot Establish a *Prima Facie* Case of Age or Race Discrimination for HFHS' Failure To Promote Her To A Senior OHRD Consultant ...................................................................................... 12

           1.    Plaintiff Was Not Qualified To Be A Senior OHRD Consultant ............. 13

           2.    There Was Not An Open Senior OHRD Consultant Position ................... 14

           3.    Plaintiff Cannot Demonstrate That She Was Treated Differently Than Similarly Situated Caucasian Employees ......................................... 14

           4.    Alleged Age And Retirement Remarks Do Not Constitute Discrimination ........................................................................... 16

      B.    Even if Plaintiff Could Establish A *Prima Facie* Case, She Has No Proof that HFHS' Reasons For Not Promoting Her Were A Pretext For Discrimination ........................................................................... 17

C.      Plaintiff Cannot Establish A *Prima Facie* Case of Retaliation:    She
        Suffered No Adverse Employment Action And Cannot Establish A Causal
        Connection ......................................................................................................17

D.      Plaintiff Cannot Establish HFHS' Actions Were Pretext For Retaliation.............20

IV.   CONCLUSION.................................................................................................................20

## INDEX OF AUTHORITIES

### Cases

*Anderson v. Premier Indus. Corp.*, No. 94–3454, 1995 WL 469429 (6th Cir. Aug. 7, 1995) ..... 14

*Bacon v. Honda of America Mfg., Inc.*, 370 F. 3d 565 (6th Cir. 2004) ......................................... 15

*Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304 (6th Cir. 1989).................... 19

*Bowman v. Shawnee State Univ.,* 220 F.3d 456 (6th Cir. 2000)................................................... 18

*Canita v. Yellow Freight System, Inc.*, 903 F.2d 1064 (6th Cir. 1999)........................................ 18

*Choulagh v. Holder*, No. 10–14279, 2012 WL 2891188 (E.D. Mich. July 16, 2012),
   *aff'd,* 528 F. App'x 432 (6th Cir. 2013)................................................................................... 18

*Comiskey v. Automotive Industry Action Group*, 40 F. Supp. 2d 877 (E.D. Mich. 1999)........... 19

*Cooper v. City of North Olmsted*, 795 F.2d 1265 (6th Cir. 1986) ................................................ 19

*Crane v. Mary Free Bed Rehabilitation Hosp.*, No. 15-1358, 2016 WL 8593471
   (6th Cir. December 11, 2015) .................................................................................................. 18

*Debano-Griffin v. Lake Cnty.*, 493 Mich. 167; 828 N.W.2d 634 (2013)...................................... 17

*Dubey v. Stroh Brewery Co.*, 185 Mich.App. 561; 462 N.W.2d 758 (1990)................................ 17

*Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344 (6th Cir. 1998) ............................... 15

*Finley v. Trotwood*, 503 Fed. Appx. 449 (6th Cir. 2012) ............................................................. 18

*Foster v. Mary Free Bed Rehab. Hosp.*, Case No. 1:13-cv-1350, 2015 WL 9487903
   (W.D. Mich. Aug. 6, 2015)...................................................................................................... 15

*Fuhr v. Hazel Park School Dist.*, 710 F.3d 668 (6th Cir. 2013)................................................... 19

*Gagne v. Northwestern National Insurance Co.,* 881 F.2d 309(6th Cir. 1989)........................... 16

*Gooden v. City of Memphis Police Dept.*, 2003 WL 21421640 (6th Cir. June 17, 2003) ........... 16

*Hazle v. Ford Motor Co.*, 464 Mich. 456, 626 N.W.2d 515 (2001) ............................................ 13

*Jacklyn v. Schering-Plough Healthcare Product Sales Corp.*, 176 F.3d 921 (6th Cir. 1999)........ 8

*Jackson v. Quanex Corp.*, 191 F.3d 647 (6th Cir. 1999) ............................................................. 13

*Johnson v. Cargill, Inc.*, 932 F.Supp.2d 872 (W.D. Tenn. 2013)................................................ 14

*Johnson v. Metro. Gov't of Nashville and Davidson County, Tenn.*, 502 Fed. Appx. 523
(6th Cir. 2012)................................................................................................................. 15

*Jones v. City of Springfield, Ill.*, 554 F.3d 669 (7th Cir. 2009) ..................................... 14

*Knighten v. McHugh*, Case No. 14-CV-12351, 2016 WL 2609783
(E.D. Mich. May 5, 2016)................................................................................................ 13

*Kocsis v. Multi-Care Mgmt.*, 97 F.3d 876 (6th Cir. 1996)............................................ 13

*Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078 (6th Cir. 1994)............................ 17, 20

*McDonald v. Union Camp Corp.*, 898 F.2d 1155 (6th Cir. 1990)................................... 17

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973) ...... 12

*Mitchell v. Toledo Hospital*, 964 F.2d 577 (6th Cir. 1992) ........................................... 15

*Moore v. Abbott Labs.,* 780 F. Supp. 2d 600 (S.D. Ohio 2011) ................................... 18

*Nguyen v. City of Cleveland*, 229 F.3d 559 (6th Cir. 2000) .................................... 13, 19

*Phelps v. Yale Security, Inc.,* 986 F.2d 1020 (6th Cir. 1993) ....................................... 16

*Shefferly v. Health All. Plan of Michigan,* 94 F. App'x 275 (6th Cir. 2004) ................ 14

*Sirvinskis v. Ross Roy, Inc.*, 1997 WL 33353649 (Mich. Ct. App. March 21, 1997)................... 16

*Sosby v. Miller Brewing Co.*, 415 F.Supp. 2d 809 (S.D. Ohio 2005)........................... 19

*Sperle v. Mich. Dept. of Corrections*, 297 F.3d 483 (6th Cir. 2002) ............................. 8

*Stone v. Bd. of Directors of Tennessee Valley Auth.*, 35 F. App'x 193 (6th Cir. 2002)............... 19

*Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089,
67 L.Ed.2d 207 (1981)..................................................................................................... 13

*Thompson v. City of Lansing*, 410 Fed. Appx. 922 (6th Cir. Feb. 10, 2011)............................. 13

*Watson v. City of Cleveland,* 202 Fed. Appx. 844 (6th Cir. 2006)............................... 18

*Weberg v. Franks*, 229 F.3d 514 (6th Cir. 2000)............................................................ 8

*Woythal v. Tex-Tenn Corp.*, 112 F.3d 243 (6th Cir. 1997)........................................... 16

iv

## Statutes

42 U.S.C. 2000e-5(e) ........................................................................................ 12

MCL 600.5805(10) ........................................................................................... 12

## <u>CONCISE STATEMENT OF ISSUES PRESENTED</u>

I.    Whether Defendant is entitled to summary judgment on Plaintiff's claims of race and age discrimination because there is no genuine issue of material fact that Plaintiff cannot establish a *prima facie* case, since she was not qualified for the Senior OHRD Consultant position, there was no such open position, and she was not treated differently than any similarly-situated employees outside of her protected class?

Defendant answers "yes."

II.    Whether, assuming Plaintiff could establish a *prima facie* case of age or race discrimination, Defendant is entitled to summary judgment on Plaintiff's claims of race and age discrimination, because there is no genuine issue of material fact that the stated reasons for Defendant's actions were not a pretext for unlawful discrimination?

Defendant answers "yes."

III.    Whether Defendant is entitled to summary judgment on Plaintiff's claims of retaliation since there is no genuine issue of material fact that Plaintiff cannot establish a *prima facie* case, because being referred to the Employee Assistance Program, and allegedly being transferred to a different position with the same level of compensation and benefits, are not adverse employment actions?

Defendant answers "yes."

III.    Whether Defendant is entitled to summary judgment on Plaintiff's claims of retaliation since there is no genuine issue of material fact that Plaintiff cannot establish a *prima facie* case, because there is no causal connection between Plaintiff's protected activity and any alleged adverse employment action?

Defendant answers "yes."

IV.    Whether, assuming Plaintiff can establish a prima facie case of retaliation, Defendant is entitled to summary judgment on Plaintiff's claims of retaliation because there is no genuine issue of material fact that the stated reasons for Defendant's actions were not a pretext for unlawful retaliation?

Defendant answers "yes."

I.    **INTRODUCTION**

Plaintiff Monica Rogers ("Plaintiff") is currently employed by Defendant Henry Ford Health System ("HFHS") as a Business Partner in the Human Resources Department.   She claims discrimination on the basis of age and race because HFHS did not promote her to a position requiring a Master's Degree, even though she does not even have a Bachelor's Degree, and even though there was no such available position.   An investigation of Plaintiff's internal complaint regarding the promotion concluded there was no discrimination.   Following the investigation, when numerous employees reported to Plaintiff's supervisor that she engaged in bizarre behavior and made threatening statements, management referred her to the Employee Assistance Program ("EAP").   She had previously been referred to EAP for disruptive and insubordinate behavior.   Not accepting any responsibility for her behavior, Plaintiff claims that the second EAP referral was in retaliation for her complaining about the promotion.   Following the EAP referral, HFHS offered to allow her return to her previous position or take a lateral "Business Partner" position.   She chose the latter but nonetheless brought this meritless lawsuit.

II.   **STATEMENT OF FACTS**

    **A.    Plaintiff Holds Several Positions In The Human Resources Department Before Being Grandfathered Into A Position Requiring A Bachelor's Degree**

Defendant HFHS hired Plaintiff in 1981. (Ex. 1, Plaintiff's Dep., pp. 317-318)  Plaintiff thereafter held a number of Human Resources positions between 1983 and 1991.   (Ex. 2, Resume)  She does not have a Bachelor's Degree. (Ex. 1, 49; Ex. 3, Harrington Davis Dep., p. 77)  In 1991, Plaintiff became a "Senior Representative, Organizational Development." (Ex. 1, 54-55) The position did not require a college degree. (Ex. 1, 56; Ex. 2)   On April 30, 2007, Plaintiff was given a position in the Organizational Human Resources Development ("OHRD") department as an "OHRD Consultant." (Ex. 1, at 54, 59) While the position required a Bachelor's

Degree, Plaintiff was "grandfathered" into the position without having a degree.[1]  (Ex. 1, at 54, 59, 189-190; Ex. 2; Ex. 4, OHRD Consultant Job Desc.; Ex. 5, Announcement)

The OHRD Department provides various types of training programs and courses for HFHS employees from new employee orientation, to leadership courses.  At the time Plaintiff became an OHRD Consultant, Laurie Jensen was the Director of the OHRD Department. (Ex. 6, at 22)  As an OHRD Consultant, Plaintiff was responsible for conducting training assessments and implementing specific training and development programs to meet assessed needs.  (Ex. 4)

The OHRD Department also contained "Senior OHRD Consultant" whose positions required a Master's Degree (Ex. 7, Sr. OHRD Consultant Job Desc.; Ex. 3, at 77; Ex. 1, at 238) A Senior OHRD Consultant is involved in project management and works with HFHS leaders to bridge the gap between the strategic vision and the organization's current performance and culture. (Ex. 7) Caucasian and African American employees held Senior OHRD Consultant positions. (Ex. 8, Chart)  Plaintiff initially reported to Jensen. (Ex. 1, at 60) In 2009, Plaintiff reported to Monica Jackson-Lewis, Manager, OHRD, and then Barbara Bressack in February 2013. (Ex. 9, Jackson Lewis Dep., p. 9; Ex. 10, Bressack Dep., p. 104)  Both Jackson-Lewis and Bressack reported to Jensen.  (Ex. 9, at p. 8; Ex. 10, at 8-9; Ex. 6, at 62-63)

### B.    Plaintiff Exhibits Intimidating And Disruptive Behavior And As A Result, Is Referred To EAP By Her Supervisor Monica Jackson-Lewis

Jensen testified that from "day one" in the department, Plaintiff engaged in intimidating behavior. (Ex. 6, at 140)  For example, Plaintiff demanded an office that had been assigned to a Senior OHRD Consultant, and told Jensen, "it didn't matter" that the office was assigned to someone else, "this [the office] is where she [Plaintiff] should be." (*Id.*)  Jensen relented and

---

[1] Plaintiff attended Davenport University in the 1980's and 1990's. (Ex. 1, at p. 50)  She has the equivalent of about a year-and-a-half to two years of credits towards a degree.  (*Id.* at 49)

gave her the office. (*Id*.) Jensen testified that she felt bullied by Plaintiff. (*Id*. at 140-141)

When Plaintiff reported to Jackson-Lewis (African American, age 54), Plaintiff became so disruptive and insubordinate that Jackson-Lewis referred her to EAP. (Ex. 12, EAP Referral; Ex. 9, at 70-71, 75-76; Ex. 1, at 96-97)   Jackson-Lewis noted that Plaintiff's problematic behavior included (1) challenging Jackson-Lewis' authority to make decisions in front of others during staff meetings; (2) engaging in communication that was not open and constructive; (3) not following instructions; and (4) focusing on what other employees were doing rather than focusing of what was expected of Plaintiff.  (Ex. 13, Note to File; Ex. 9, at 66-67, 70; Ex. 1, at 96-97)  Plaintiff was warned that her continued creation of "negative conflict" among leadership and team members would not be tolerated and could lead to termination.  (Ex. 13)[2]

### C.    Plaintiff Claims She Should Be Promoted to Senior OHRD Consultant

Plaintiff testified that she came to the "conclusion" between December 2012 and January 2013 that she should be "given" the position of Senior OHRD Consultant because she believed she was doing the duties of a Senior OHRD Consultant. (*Id*.)  Her conclusion was based upon her belief that she was leading "two or more system level projects." (*Id*. at 125-126)  Plaintiff raised the issue with Jensen who disagreed. (Ex. 14, Journal Note; Ex. 1, at 196)

On January 23, 2013, Plaintiff, Jensen, and Jan Harrington-Davis (African-American, age 41), Director of Employee and Labor Relations, Workforce Diversity and Compliance, met to discuss Plaintiff's claim that she should be promoted. (Ex. 1, at 197; Ex. 3, at 57, 59) Harrington-Davis spoke to Plaintiff and Jensen and reviewed the Senior OHRD Consultant job

---

[2] Jackson-Lewis indicated**:  "Monica appears to lack total self awareness of these behaviors even when provided with documented evidence and assumes a victim mentality resulting in obvious anger (loud and fist pounding) or withdrawn.  Based on her bringing up issues from years in the past there appears to be some deep rooted problems that contributes to her current behavior.  Because of these behavior swings we are concerned about her emotional and physical well-being and that of the team."**  (Ex. 12, emphasis added)

3

description.[3] (Ex. 3, at 86-87)  She also disagreed that Plaintiff should receive a promotion.  (Ex. 1, at 197-199; Ex. 15, Internal Complaint)  Plaintiff admitted during this meeting that she was not designing and building leadership development programs or designing and executing HFHS Coaching strategy, two of the job duties of a Senior OHRD Consultant. (Ex. 3, at 87-88; Ex. 7) Harrington-Davis said that the only way Plaintiff could obtain the promotion would be for her to attain a Master's Degree and qualify for the position, or the department could revise the job description in terms of job duties and educational requirements, for the whole department.  (Ex. 3, at 71-72)  Bressack and Jackson-Lewis also disagreed with Plaintiff's assessment that she should be promoted. (Ex. 9, at 54, Ex. 10, at 37-38, 40; Ex. 16, Jackson-Lewis Notes)

### D.   Plaintiff Submits A Complaint To Human Resources And An Investigation Is Conducted By The Deputy General Counsel Of HAP

Not satisfied with the response she received from Jensen, Harrington-Davis, Bressack, and Jackson-Lewis, on March 25, 2013, Plaintiff submitted a written complaint to Derick Adams (African-American, age 58), Vice President, Human Resources for Health Alliance Plan ("HAP")[4] and HFHS. (Ex. 15; Ex. 1, at 169; Ex. 17, Adams Dep., pp. 7-8)  Adams had responsibility for Human Resource functions over HAP and the HFHS corporate support departments. (Ex. 17, at 8) Plaintiff claimed she was subjected to "discrimination/harassment by Laurie Jensen." (Ex. 15)  She claimed she should be promoted to a Senior OHRD Consultant position and that there were 6 "white counterparts" who received promotions who either "do not have a degree or job descriptions have been modified to reflect the lack of an advanced degree or lack of experience." (*Id*.) Adams asked Dan Champney, the Deputy General Counsel for HAP, to

---

[3] Nowhere in the Senior OHRD Consultant job description does it describe the duties as "leading two or more system level projects," the basis for Plaintiff's claim that she was performing the duties of that position. (Ex. 7)

[4] HAP is a wholly owned subsidiary of HFHS.

4

investigate Plaintiff's complaint. (Ex. 17, at. 11; Ex. 18, Champney Dep., pp. 7-8) Adams selected Champney because Champney had a background in HR, was part of the HFHS General Counsel's office, and Adams saw Champney as "an independent person who could do the investigation of Human Resources." (Ex. 17, at 11)

Champney interviewed Plaintiff, Jensen, Bressack, Harrington-Davis and Jackson-Lewis. (Ex. 18, at 18, 23; Ex. 19, Champney Report)   He reviewed various versions of the job descriptions, Plaintiff's performance evaluation, Jensen's journal entries, and other documents. (Ex. 18, at 13-19; Ex. 19) Champney concluded Plaintiff had not been subjected to harassment[5] or discrimination. (Ex. 19)  Not satisfied with the investigation results, Plaintiff filed an EEOC Charge in July 2013, falsely claiming race discrimination and retaliation. (Ex. 20, EEOC Charge)

> ### E.   Plaintiff's Erratic Behavior And Threatening Statements Following The Investigation Are Brought To The Attention Of Management by Several Employees, Resulting In Her Being Referred To EAP For The Second Time

Following the conclusion of the investigation, a number of employees reported to Jensen that Plaintiff had exhibited erratic behavior and made threatening statements:

- Patrick Payne (African-American), Plaintiff's coworker, told Jensen **Plaintiff had taken a baseball bat and smashed out the car window of a woman who Plaintiff thought was having an affair with her husband,[6] that he felt that Plaintiff could "go postal," that "she was crazy" and that he didn't want to have anything to do with her.** (Ex. 1, at 52, 76, 93-95; Ex. 6, at 169, 181; Ex. 21, Jensen Summary) Payne testified that Plaintiff told him " **I hate that bitch [Jenson] so much I could just fight her in the parking lot.**" (Ex. 22, Payne Dep., pp. 65-66)

- Plaintiff told Bressack **that Jensen was a "liar" and that "the truth will come out and justice will be served."**(Ex. 10, at 114-122)  Bressack found this unsettling and reported it to Jensen.  (*Id*. at 121; Ex. 6, at 177, 182, 194-195)  **Plaintiff admitted making the statement**. (Ex. 1, at 228)

---

[5] Although Plaintiff referenced "harassment" in her complaint she admitted it pertained to a 2008 incident and was not part of her current complaint. (Ex. 1, at 192-193; Ex. 19)
[6] Jackson-Lewis testified she heard Plaintiff tell of smashing the woman's windshield.  (Ex. 9, at 32-35)

- Karen Giovannini, an OHRD Consultant, reported to Jensen that during a staff meeting Plaintiff was acting **"very euphoric and very out of sorts, laughing really loud, kind of swaying back and forth."** (Ex. 23, Giovannini Dep., pp. 7-8) Giovannini was concerned as she had never seen that behavior from Plaintiff. (*Id*. at 8)  Giovanni reported that Plaintiff was also **touching and patting another employee**, Mike Edge.  (*Id*. at 10-11)

- Another employee, Lamya Yelda, told Jensen that she wanted to stay away from Plaintiff because she **had heard from a number other employees that Plaintiff had engaged in "strange behavior."** (Ex. 24, Yelda Dep., pp. 6-7)

Jensen reported these concerns to her supervisor, Kathy Oswald, Senior Vice President and Chief Human Resource Officer for HFHS. (Ex. 25, Oswald Dep., pp. 13-14; Ex. 6, at 168-171)  Jensen then reported them to Adams. (Ex. 17, at 15-16)  Adams testified that Jensen was concerned for her personal safety. (*Id*.)  Adams decided to refer Plaintiff to EAP for a fitness for duty exam.[7] (Ex. 17, at 16, 66, 73; Ex. 25, at 7)  On September 11, 2013, Plaintiff was placed on a paid suspension and told that concerns were raised about danger to herself and others, and that "people felt she was a threat in the workplace."[8]  (Ex. 1, at 253-254; Ex. 17, at 65)  Plaintiff replied "okay fine." (Ex. 1, at 253)  Plaintiff was not angry or upset and never told Adams she thought the referral was retaliatory. (Ex. 1, at 307) Plaintiff was seen by a physician, Dr. Bodnar, on September 20, 2013, who cleared her to return to work but recommended she "follow up with EAP." (Ex. 1, at 250- 251; Ex. 28, Evaluation)  Plaintiff never followed up. (Ex. 1, at 251)

Adams contacted Plaintiff, told her she was cleared to return to work and set up a meeting for himself, Plaintiff and Harrington-Davis. (Ex. 17, at 65, 75)  The meeting was October 2, 2013.[9] (*Id*. at 75, 86-86; Ex. 3, at 43-44; Ex. 1, at 255)  Plaintiff was told she could return to her position in OHRD, or she could laterally move into a HR "Business Partner"

---

[7] HFHS has a System-Wide "Workplace Violence – Managing Employee Violence" policy. (Ex. 26, HR Pol. No: 5.13)
[8] This action was pursuant to the HFHS "Employee Health Screenings, For Cause Testing, & Fitness for Duty Examination" policy.  (Ex. 17, at 13-14; Ex. 27, HR Pol. No: 4.10)
[9] Jensen was not consulted or involved in the discussions or decision as to options offered to Plaintiff following the EAP referral. (Ex. 29, Jensen Dep. II, pp. 20-21; Ex. 17, at 75-76)

position[10] at HAP, a position that was open because the incumbent was on a medical leave. (Ex. 17, at 76-77; Ex. 3, at 48, 84-85; Ex. 1, at 256-257)  Adams thought the Business Partner position would give Plaintiff "some space" from having to report to Bressack in Jensen's department.  (Ex. 17, at 76)  Adams testified that he also brought up severance as an option. (*Id*. at 78-79)  Plaintiff claims that she was only given the options of taking the Business Partner position or of taking a settlement (she was told to "come up with a number").  (Ex. 1, at 257-259) A couple days after the meeting, Plaintiff called Adams and told him she decided to take the Business Partner position with HAP.  (Ex. 1, at  258; Ex. 17, at 84, 89)  On October 14, 2013, Plaintiff transferred to that position where is now reporting directly to Adams.  (Ex. 1, at  258; Ex. 17, at 85; Ex. 31)  Her rate of pay did not change and she has received salary increases since her transfer.  (Ex. 1, at 280)  Plaintiff is still employed in this position.  (*Id*. at  25)

### F.   Plaintiff Has No Evidence That She Was Denied A Promotion Because Of Her Race Or Treated Differently Than Six "White Counterparts"

Plaintiff's claim that she was not given a promotion to a Senior OHRD Consultant position because of her race and age, is completely destroyed by the undisputed facts:

- **There was no opening for a Senior OHRD Consultant position.**  (Ex. 10, at 118)  **Plaintiff expected to have an opening created and then be promoted to the position without even applying or going through a selection process.**

- **The Senior OHRD Consultant position requires a Master's Degree.** (Ex. 7) **Plaintiff admitted she is not aware of any time when the position did not require a Master's Degree.** (Ex. 1, at 238)  **All persons hired or promoted to the position were required to have a Master's Degree.  Plaintiff does not have a Bachelor's Degree.**

- **Older employees and African American employees have been promoted to or hired for Senior OHRD Consultant positions.** (Ex. 11)  **Mike Edge is Plaintiff's age and Cathy Lynn Smith is two years younger.** (*Id*.)  **Five of the six individuals who held the position were 40 or over.** (*Id*.)  **Three of the six persons who have held the position since 2010 were African American.** (*Id*.)

---

[10] The Business Partner position required a Bachelor's Degree. (Ex. 30, Bus. Partner Job Desc.)

In her internal complaint and this lawsuit Plaintiff alleges that she was treated differently than six Caucasian employees ("white counterparts"). (Ex. 15; Ex. 18, at 19; Ex. 17 at. 61-62; Ex. 1, at 170, 188)   However, there is no truth to any of the unsupported assertions by Plaintiff about the 6 employees, their qualifications or the requirements for the positions involved: [11]

**Debbie Saoud – Director Human Resources for Physician Services.**  Plaintiff claims that Debbie Saoud[12] was placed in a Human Resources Director position despite not having two years of management experience. (Ex. 1, at 171)  Plaintiff claims that "normally" to be a director you need two years of management experience. (*Id*.)  However, Plaintiff admitted she never saw the job description for Saoud's position and admitted that it "may" have changed.  (*Id*. at 172-174)  Her claim that Saoud got the job without the required experience is based solely upon "people talking." (*Id*. at 173-175)  Plaintiff did not apply for the position. (*Id*. at 174)

Saoud holds the position of  Director, Human Resources for Physician Services (Ex. 31, Saoud Aff., ¶1)  She was selected for the position by Kathy Macki (not Jensen) on or about November 18, 2012. (*Id*. at ¶11) At the time Saoud was promoted, she had a Bachelor's Degree and two Associate's Degrees. (*Id*. at ¶3) She had worked for HFHS in Human Resources for 11 years, including almost two years as a Manager. (*Id*. at ¶¶4-9) She had two years of management experience, including her previous employment at Selectcare. (*Id*.at ¶10) The posting required only 1 year of leadership experience. (Ex. 32; Ex. 46, Legault Aff. Ex. B)

---

[11] A party opposing a motion for summary judgment cannot use hearsay or other inadmissible evidence to create a genuine issue of material fact.  *See Sperle v. Mich. Dept. of Corrections*, 297 F.3d 483, 485 (6th Cir. 2002) citing *Weberg v. Franks,* 229 F.3d 514, 526 n. 13 (6th Cir. 2000) therein."); *see also Jacklyn v. Schering-Plough Healthcare Product Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999).

[12] After identifying Deborah Temrowski in her internal complaint as the person who received the Manager, Human Resources position (Ex. 15), Plaintiff testified in her deposition (3 years later) that it was an "error" and that Deborah Saoud was the person she was referring to. (Ex. 1, at 170)

**Nicole Logan – Senior Compensation Consultant.**  Plaintiff claims that Nicole Logan was selected for the position of Senior Compensation Consultant which Plaintiff claims "originally" required a Master's Degree. (Ex. 1, at 179-180)  Logan had a Bachelor's Degree.  However, Plaintiff admitted that the job description may have changed from a Master's Degree being "required" to being "preferred" but she did not know when it changed.  (*Id*. at  171, 182) She did not know when Logan's position was posted but admitted that when Logan got the position, the job description indicated that a Master's Degree was "preferred."  (*Id*. at 179-180)  Plaintiff did not apply for the position.  (*Id*. at 180)

Logan has held the position of Senior Compensation Consultant for 6 years since August 1, 2010. (Ex. 33, Logan Aff., ¶7)  She has been employed at HFHS since May 1, 2000. (*Id*. at ¶1)  She holds a Bachelor's Degree which she obtained in 2000. Kristen Harland, Director of Compensation, selected Logan for the position. (*Id*. at ¶8)  The job description for the position, which originated *in 2000,* indicates a Bachelor's degree is required, and that a Master's Degree is preferred.  (Ex. 34, Sr. Compensation Consultant Job Desc.; Ex. 46, Ex. F)

**Tara Boufford – eHR Analyst.**  Plaintiff claims that Tara Boufford was promoted to an "eHR Analyst" position without the required Bachelor's Degree. (Ex. 1, at 180-181)  Plaintiff testified that Boufford met the job description requirements at the time she got the position, that the job description had been changed before Boufford got the position; but she did not know when it was changed. (*Id*. at  182-183)  Plaintiff did not apply for the position. (Ex. 35, Hiring Auth.)

Boufford was promoted into the eHR Analyst position on August 14, 2011.  At the time of her promotion, she had worked for HFHS since 2000 with 9 years of experience with Peoplesoft and iCRM applications (Ex. 35; Ex. 36, Boufford Resume) She was also expecting her Bachelor's Degree in the summer of 2012.  (Ex. 35) Contrary to Plaintiff's assertion, the eHR

Analyst job description, which originated in 2007, four years before Boufford was selected for the position, specifically provides that "Experience will be considered in lieu of education requirements." (Ex. 37, eHR Analyst Job Desc.) It also indicates that experience in Peoplesoft, Information Technology and supporting HRIS systems is preferred, all experience that Boufford had before she was selected. (Ex. 37; Ex. 36)  Jensen did not promote Boufford nor supervise Boufford.  (Ex. 1, at 195)  Ryan Amo selected Boufford for the position. (Ex. 46, ¶5)

**Carol Bridges – Director, Service Excellence and Volunteer Services.**  Plaintiff claims that Carol Bridges serves in a Director's position even though she does not have a degree.  (Ex. 1, at 183)  Plaintiff does not know if Bridges position was ever posted, but admitted that she (Plaintiff) never applied for the position. (*Id.*)

Bridges holds the position of Director, Service Excellence and Volunteer Services at Henry Ford Wyandotte Hospital ("HF Wyandotte") (Ex. 38, Bridges Aff.)  *She is 62 years of age.* (*Id.* at ¶1) She began working for HFHS in September 1988 and has held a number of positions in different departments and facilities. (*Id.*)  She became Director, Volunteers at HF Wyandotte on or about July 28, 2002. (*Id.* at ¶7) She was offered the position by Tom Ostrander, VP of Human Resources at HF Wyandotte. (*Id.*)  The job posting applicable to Director, Volunteers does not require a degree, but provides for equivalent experience. (Ex. 39, Dir. Vol Svcs.) Bridges was given additional responsibilities over the Service Excellence program and given the  job title of  Director, Service Excellence and Volunteer Services by James Sexton, President and CEO, HF Wyandotte.  (*Id.* at ¶8)  The job description for her position indicates Bachelor's Degree is  only preferred. (Ex. 39)

**Patti Sanburn – Director Human Resources for Community Care Services ("CCS").** Plaintiff takes issue with Patti Sanburn, the Director of Human Resources for CCS, because she

"had heard" that "Sanburn didn't have a degree." (Ex. 1, at 185)  Plaintiff admitted that she doesn't know what the job duties of Sanburn's position are, and that Sanburn's job duties "might be different" from other HR director level positions because Sanburn works for a different business unit. (*Id.*)  Plaintiff does not know when Sanburn was promoted to this position, and does not know Sanburn's years of experience. (*Id.* at 184)  Plaintiff does not know if the job description was changed for Sanburn, but admitted that Sanburn met the requirements. (*Id.* at 184, 221, 223-224)  Plaintiff did not apply for the position.

Sanburn has worked in different departments and different areas of Human Resources since 1973. (Ex. 40, Sanburn Aff., ¶1)  *She is 60 years of age.*  (*Id.* at ¶1)  She was promoted to the position of Director, Human Resources for CCS, an operating division of HFHS, on September 16, 2007 after serving in Supervisor and Manager roles for Diversified Services and Community Care Services since 1987. (*Id.* at ¶12)  The job description for her position provides for a Bachelor's Degree "or a minimum of 8 years of experience as a human resources manager." (Ex. 41, HR Dir.-CCS Job Desc.)  At the time of promotion to her current position, Sanburn had 15 years of experience as an HR manager. (*Id.* at ¶¶10-12) John Polanski, President and Chief Executive Officer of CCS, offered her the position.  (*Id.* at ¶13)

**Brian Robertson - OHRD Consultant.**  Plaintiff testified that "I'm accusing her [Jensen] of discrimination because she didn't give me the same opportunities as she did Brian Robertson." (Ex. 1, at 194) Yet, Plaintiff does not even know how he got his position, or if he interviewed for it.  (*Id.* at 185)  Plaintiff complains that Robertson was placed in an OHRD Consultant position without a degree, when in fact, she received the same position without a degree. (*Id.* at 195)

Robertson worked 17 years for Entech Inc., a vendor supplying HFHS with technical training design, development, implementation and facilitation services. (Ex. 42, Robertson Aff.,

¶2) He is 58 years old.  (*Id*. at ¶1)  The last 9 years of his employment were spent as an Onsite

Training Coordinator, working onsite at HFHS. (*Id*. at ¶2) Robertson became employed by

HFHS on or about December 27, 2005 as a "Technical Analyst-Information Services" in the

Technical Education Services area.  (*Id*. at ¶3)  Robertson became an OHRD Consultant on or

about January 16, 2011 as a result of a reorganization whereby the Technical Educational

Services ("TES") Department was merged into the OHRD Department.  (*Id*. at ¶4; Ex. 25, at 17-

18)  This was a lateral move; a change in job title. (Ex. 42, ¶4)  Robertson and another employee

both had their positions retitled as OHRD Consultants. Robertson met the experience

requirement for the position. (Ex. 42, Robertson Aff., ¶4)

Plaintiff's assertions about the 6 employees, their qualifications, and the requirements of

the positions involved are all unsupported by the evidence. Moreover,  Jensen had nothing to do

with any of the persons receiving the positions, for which Plaintiff never applied.

## III.   ARGUMENT

### A.   Plaintiff Cannot Establish a *Prima Facie* Case of Age or Race Discrimination for HFHS' Failure To Promote Her To A Senior OHRD Consultant[13]

If as here, the plaintiff has no direct evidence of discrimination, the court applies the

three-step legal analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct.

1817, 36 L.Ed.2d 668 (1973).   Under this framework, a plaintiff bears the initial burden of

---

[13]  In her deposition, Plaintiff cited to a handful of  alleged discriminatory incidents that she claims took place in 2008 or 2010, including (1) an allegedly discriminatory process for determining flex time scheduling in 2008 and 2010 (Ex. 1, at 27, 29, 70-71; Ex. 43, Schultz Note); (2) a vague comment allegedly made by Jensen in 2008 that "you girls always use that as a copout" (Ex. 1, at 27); and (3) a staff meeting on May 22, 2008 where Plaintiff felt that Jensen "put [her] down" or was name calling. (Ex. 44, Pl's Notes) None of these alleged incidents are actionable because they fall outside the statute of limitations and/or were not raised in Plaintiff's EEOC charges.  *See* MCL 600.5805(10) (state action must be commenced within three years of the alleged discriminatory act); *see also* 42 U.S.C. 2000e-5(e) (Title VII charge must be brought within 300 days of the alleged discriminatory act.)

establishing a *prima facie* case of discrimination. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If the plaintiff succeeds, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its action. *Id*. Should the defendant articulate such a reason, the plaintiff must then prove by a preponderance of the evidence that the employer's reasons are not its true reasons, but rather a pretext for discrimination. *Id*.

To establish a *prima facie* case of discrimination based upon a failure to promote, an employee must demonstrate: (1) she is a member of a protected class; (2) she applied for and was qualified for a promotion; (3) she was considered for and denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions at the time the employee's request for promotion was denied.[14] *See Nguyen v. City of Cleveland*, 229 F.3d 559, 562-563 (6th Cir. 2000); *Hazle v. Ford Motor Co.*, 464 Mich. 456, 467, 626 N.W.2d 515 (2001).

### 1.      Plaintiff Was Not Qualified To Be A Senior OHRD Consultant

It is undisputed that the Senior OHRD Consultant position requires a Master's degree, and Plaintiff does not even have a Bachelor's Degree. (Ex. 1, at 238; Ex. 9, at 54; Ex. 3, at 69; Ex. 7) Plaintiff is unaware of anyone holding a position that requires a Master's Degree when they did not have a Bachelor's Degree. (Ex. 1, at 348-349) Plaintiff was not qualified.

In order to be qualified for a position, Plaintiff must have the academic credentials or experience that the position requires. For example, in *Kocsis v. Multi-Care Mgmt.*, 97 F.3d 876, 883 (6th Cir. 1996), summary judgment for the employer was affirmed because Plaintiff did not

---

[14] Discrimination claims under 42 U.S.C. 1981, Title VII and ELCRA are analyzed under the same framework. *See Thompson v. City of Lansing*, 410 Fed. Appx. 922 (6th Cir. Feb. 10, 2011); *Jackson v. Quanex Corp.*, 191 F.3d 647, 658 (6th Cir. 1999); *Knighten v. McHugh*, Case No. 14-CV-12351, 2016 WL 2609783, at *7 (E.D. Mich. May 5, 2016)

have a "'Train the Trainer' certificate," which was a written requirement for anyone seeking the position in question. *See also Shefferly v. Health All. Plan of Michigan,* 94 F. App'x 275, 283 (6th Cir. 2004) (plaintiff was not qualified because the written job description for the position required applicants to have earned a Bachelor's Degree, and the plaintiff did not have a degree.)[15]

## 2.    There Was Not An Open Senior OHRD Consultant Position

There was no opening or posting for a Senior OHRD Consultant position. (Ex. 10, at 118) Plaintiff expected to have an opening created and then be promoted to the position without even applying or going through a selection process.  It is well established that a failure to promote claim requires an open position.  *See Nguyen* 229 F.3d at 565 (employee failed to establish *prima facie* discrimination case under Title VII with respect to promotion to position of chief of environmental enforcement, inasmuch as city never attempted to fill such position); *Anderson v. Premier Indus. Corp.,* No. 94–3454, 1995 WL 469429, at *7 (6th Cir. Aug. 7, 1995) (Plaintiff failed to establish that defendant's failure to hire her was due to discrimination, where there was no position available); *Johnson v. Cargill, Inc.*, 932 F.Supp.2d 872, 887 (W.D. Tenn. 2013)(That there was no open position of lead maintenance at facility at which African-American employee worked during relevant time period precluded him from prevailing); *Jones v. City of Springfield, Ill.*, 554 F.3d 669, 673 (7th Cir. 2009)(City's decision not to promote white officer was not racially motivated, where there were no open positions to which he could have been promoted).

## 3.    Plaintiff Cannot Demonstrate That She Was Treated Differently Than Similarly Situated Caucasian Employees

None of the 6 Caucasian employees alleged by Plaintiff to have improperly as received promotions can be considered similarly situated to Plaintiff. All but one (Roberston) met the qualifications of the positions they received. They received different jobs, in different areas and

---

[15] Unpublished cases are attached hereto as Exhibit 47.

departments, with different qualifications, from different hiring managers.[16] The Sixth Circuit has defined the "similarly situated" element as follows:

> To be deemed "similarly situated," the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

*Mitchell v. Toledo Hospital*, 964 F.2d 577, 583 (6th Cir. 1992) (internal quotations and citations omitted). This requires "that the plaintiff demonstrate that he or she is similarly-situated to the non-protected employee in all *relevant* respects." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th Cir. 1998) (emphasis in original); *see also Foster v. Mary Free Bed Rehab. Hosp.*, Case No. 1:13-cv-1350, 2015 WL 9487903, *5 (W.D. Mich. Aug. 6, 2015) ("a plaintiff must establish that she and the non-protected person who ultimately was hired for the desired position had similar qualifications"); *Johnson v. Metro. Gov't of Nashville and Davidson County, Tenn.*, 502 Fed. App'x. 523 (6th Cir. 2012) (Plaintiffs could not show that they were similarly situated to the promoted candidates because they did not have "similar qualifications.") Plaintiff was not similarly situated to Senior OHRD Consultants since she did not have a Master's Degree. Older employees and African American employees have been given that position. (Ex. 8)[17]

---

[16] Allegations of a pattern and practice of discrimination are inappropriate to prove discrimination in an individual case. *See Bacon v. Honda of America Mfg., Inc.*, 370 F. 3d 565 (6th Cir. 2004). Even assuming Plaintiff's allegations about these 6 employees were true, 6 promotions over a 10-year period for an employer of more than 20,000 employees hardly establishes a pattern and practice.

[17] Plaintiff also testified that she "concluded" that African American employees were passed over for promotions because of their race: Patrick Payne, Kathy Buyck, Kevin Claxton, Glen Sanford, Sammye Van Diver and Bronwyn Davis. (Ex. 1, at 230, 241-242; Ex. 45, OFCCP Interview) However, her conclusion was based solely on the fact that these employees applied for but did not receive some promotions. (*Id.*) She admitted she did not know who were the successful applicants for the positions in question. (Ex. 1, at 230-236, 241-242) Conclusory and

**4.      Alleged Age And Retirement Remarks Do Not Constitute Discrimination**

Plaintiff claims that two comments constitute evidence of "age consciousness": (1) a comment by Jensen where she allegedly said "I don't know about you but I feel that at our age we only have one good job left" and (2) a comment by Harrington-Davis allegedly said during the return to work meeting on October 2, 2013 "I don't know how much longer you plan to work. This is a once-in-a-lifetime opportunity. Maybe you want to think about, you know, being able to retire and, you know, come up with a figure that we can respond to for a settlement in lieu of dropping the charges." (Ex. 1, at 299, 301-302)  Jensen and Harrington-Davis denied making the statements. (Ex. 19; Ex. 3, at 81; Ex. 29, at 8)

The alleged statement by Jensen is age neutral and if said, is nothing more than a self-deprecating remark not aimed at Plaintiff. In fact, the statement begins with "I don't know about you…."  Harrington's alleged statement was similarly age neutral and non-judgmental: "I don't know how much longer you plan on working..."[18]  Even if Plaintiff was asked about retirement, such a comment is not indicative of age discrimination.  *See Woythal v. Tex-Tenn Corp.*, 112 F.3d 243, 247 (6th Cir. 1997) (questions about retirement or plans for the future do not amount to evidence that plaintiff's age was the reason for his departure from defendant). The statement

---

unsubstantiated assertions cannot defeat a motion for summary judgment.  *See Gooden v. City of Memphis Police Dept.*, 2003 WL 21421640, at *2 (6th Cir. June 17, 2003). Payne denied that he had been discriminated against because of his race.  (Ex. 1, at 26)

[18] *See Sirvinskis v. Ross Roy, Inc.*, 1997 WL 33353649 at *3-4 (Mich. Ct. App. March 21, 1997) (comment made prior to plaintiff's termination by supervisor who terminated plaintiff to "keep on being a grumpy old man" did not demonstrate discriminatory animus on part of employer); *Phelps v. Yale Security, Inc.,* 986 F.2d 1020 (6th Cir. 1993) (comments by supervisor that plaintiff was "too old" for a position, and that her upcoming 55th birthday party was "cause for concern" were irrelevant, and prejudicial); *Gagne v. Northwestern National Insurance Co.,* 881 F.2d 309, 315-316 (6th Cir. 1989) (affirming summary judgment for employer in age discrimination claim based on her supervisor's statement that he "needed younger blood").

allegedly made by Harrington-Davis was made months <u>after</u> Plaintiff was told she would not receive the promotion and <u>after</u> Plaintiff was referred to EAP.

> **B.** **Even if Plaintiff Could Establish A *Prima Facie* Case, She Has No Proof that HFHS' Reasons For Not Promoting Her Were A Pretext For Discrimination**

Assuming Plaintiff could establish a *prima facie* claim of age or race discrimination, she must produce evidence that HFHS's proffered legitimate reasons for not promoting Plaintiff (1) have no basis in fact, (2) did not actually motivate HFHS' decision, or (3) were insufficient to warrant the decision. *See Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994); *Dubey v. Stroh Brewery Co*., 185 Mich.App. 561, 565-566; 462 N.W.2d 758 (1990).

Here, Plaintiff didn't receive the promotion because she did not have a Master's Degree and was not performing the duties of Senior OHRD Consultant. (Ex. 9, at 54; Ex. 3, at 69; Ex. 7) Plaintiff is unaware of anyone at HFHS who has held a position requiring a Master's Degree when they did not even have a Bachelor's Degree. (Ex. 1, at 348-349) Both older employees and African-American employees were promoted to and/or hired for the Senior OHRD Coordinator position. (Ex. 8) Plaintiff has no evidence to suggest that her lack of a degree did not actually motivate the decision to not promote, nor can she show that Defendants' actions had no basis in fact. *Dubey*, 185 Mich. App. at 565-566. The soundness of HFHS' business judgment in its promotional decisions "may not be questioned as a means of showing pretext." *Dubey*, 185 Mich. App. at 566; *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir. 1990); *Debano-Griffin v. Lake Cnty*., 493 Mich. 167, 180; 828 N.W.2d 634, 641 (2013).

> **C.** **Plaintiff Cannot Establish A *Prima Facie* Case of Retaliation: She Suffered No Adverse Employment Action And Cannot Establish A Causal Connection**

To establish a *prima facie* case of retaliation under any theory, Plaintiff must show that (1) she engaged in activity protected by the appropriate statute; (2) her employer subsequently took an adverse employment action; and (3) a causal connection exists between the protected

activity and the adverse employment action.  *See Canita v. Yellow Freight System, Inc.*, 903 F.2d 1064, 1066 (6th Cir. 1999).   An actionable adverse employment action is "a materially adverse change in the terms and conditions of [a] plaintiff's employment."  *See Crane v. Mary Free Bed Rehabilitation Hosp.*, No. 15-1358, 2016 WL 8593471, at *4 (6th Cir. Dec. 11, 2015).  The Sixth Circuit has observed that "*de minimis* employment actions are not materially adverse and, thus, not actionable." *Bowman v. Shawnee State Univ.,* 220 F.3d 456, 462 (6th Cir. 2000).

Plaintiff cites four alleged adverse employment actions: (1) she was not invited to attend "culture" meetings when the proposed Beaumont merger was being considered – but admitted only Jensen and Schultz were invited (Ex. 1, at 264, 265; Ex. 11, Email Chain); (2) her one-on-one meetings with Bressack were allegedly cancelled between June – September 2013 – but Plaintiff does not know why they were cancelled and never asked why (Ex. 1, at 264, 266, 268, 270); (3) she was sent to EAP (*Id*. at 272); and (4) her transfer to the HAP Business Partner position.  (*Id*. at 272)  None of these incidents are materially adverse employment actions.

Courts have routinely held that exclusion from meetings is not an adverse employment action.  *See Finley v. Trotwood*, 503 Fed. Appx. 449, 454 (6th Cir. 2012) ("district correctly decided that exclusion from meetings [is not] a materially adverse action under state or federal law"); *Watson v. City of Cleveland,* 202 Fed. App'x 844, 855 (6th Cir. 2006) (removal from two investigations, exclusion from some meetings, and denial of raise did not constitute adverse employment actions); *Moore v. Abbott Labs.,* 780 F. Supp. 2d 600, 620–21 (S.D. Ohio 2011).

Likewise, a referral to EAP for a fitness for duty exam is not an adverse employment action.  In *Choulagh v. Holder*, No. 10–14279, 2012 WL 2891188, at *7 (E.D. Mich. July 16, 2012), *aff'd,* 528 F. App'x 432 (6th Cir. 2013), the court noted that an EAP referral "cannot be viewed as an adverse employment action nor is it sufficient evidence of severe or pervasive

18

retaliatory harassment by a supervisor." *Id.*   In *Stone v. Bd. of Directors of Tennessee Valley Auth.*, 35 F. App'x 193, 196 (6th Cir. 2002), the Sixth Circuit affirmed  the grant of summary judgment in a retaliation case since "[t]here was no evidence that the fitness examination affected the terms and conditions of plaintiff's employment." *Stone,* 35 F.App'x at 199.

Similarly, Plaintiff cannot show a causal connection between her complaints about not being promoted and the alleged adverse employment actions.  A causal connection is established when a plaintiff proffers "evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action." *Fuhr v. Hazel Park School Dist.*, 710 F.3d 668, 675 (6th Cir. 2013). Temporal proximity alone cannot establish a causal connection. (*Id.*)  To establish causal connection, Plaintiff "must produce evidence from which an inference can be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination action." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).  The mere fact that an adverse employment action takes place after protected activity has occurred is not, standing alone, sufficient to support a finding of a causal connection.  *Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1314 (6th Cir. 1989) (no causal connection between plaintiff's letter and demotion one month later); *Cooper v. City of North Olmsted*, 795 F.2d 1265, 1272 (6th Cir. 1986) (no causal link between filing of civil rights charge and discharge four months later); *Comiskey v. Automotive Industry Action Group*, 40 F. Supp. 2d 877, 898, fn. 22 (E.D. Mich. 1999) (four months between memorandum and discharge too remote to establish causal connection); *Cooper v. City of North Olmsted*, 795 F.2d 1265, 1272 (6th Cir. 1986) (no causal connection where employment decision occurred four months after plaintiff filed an EEO complaint). *Sosby v. Miller Brewing Co.*, 415 F.Supp. 2d 809, 818 (S.D. Ohio 2005), *aff'd*, 211 Fed. Appx. 382 (6th Cir. 2006).  Therefore, while temporal proximity

alone cannot establish a causal connection, a lack of temporal proximity alone can be fatal to an attempt to establish a causal connection under circumstances such as these. *See Fuhr*, *supra*.

Plaintiff complained about not being promoted on March 25th, but was not referred to EAP until September 13, 2013, six months later. Moreover, the referral was prompted by reports by Plaintiff's coworkers. Adams made the decision to refer her, not Jensen, who she claims was the discriminatory actor. Jensen was not involved in the decision as to options for Plaintiff after the EAP referral. Plaintiff was offered the option *to continue working* at HFHS after the referral.

### D.  Plaintiff Cannot Establish HFHS' Actions Were Pretext For Retaliation

Assuming Plaintiff could establish a *prima facie* case of retaliation, the burden of proof then shifts to Defendant to rebut the retaliation presumption by producing evidence of a legitimate, non-retaliatory reason for its actions. *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). Plaintiff cannot show HFHS' reasons for referring her to EAP were pretextual. Plaintiff's coworkers *approached* Jensen to report Plaintiff's strange behavior and intimidating statements. Moreover, this was not the first time Plaintiff engaged in behavior requiring referral to EAP. Additionally, offering or transferring her ("giving her space") to another position outside the department where she had intimidated coworkers and supervision was a reasonable option. Plaintiff is unable to demonstrate pretext on her retaliation claim.

## IV.  <u>CONCLUSION</u>

For the reasons set forth above, Defendant respectfully requests the Court to grant its Motion for Summary Judgment, and award such other relief as the Court deems appropriate.

<div style="margin-left:40%">

Respectfully submitted,

VARNUM LLP

By: <u>/s/ Terrence J. Miglio</u>
Terrence J. Miglio (P30541)
Barbara E. Buchanan (P55084)
Attorneys for Defendant

</div>

Dated: August 1, 2016

20

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 1, 2016, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all parties of record.

By:  <u>*/s/ Terrence J. Miglio*</u>
Terrence J. Miglio