Exhibit 19

# Investigation Report

## CONFIDENTIAL

To: Investigation File

From: Dan E. Champney, Esq.

      Deputy General Counsel

      Health Alliance Plan

      2850 W. Grand Boulevard

      Detroit, MI

Date: May 29, 2013

Re:    Complaint filed by Monica Rogers alleging discrimination on the basis of age and race, as contained a complaint letter dated March 25, 2013

### I.  Summary of Complaint:

Monica Rogers alleges discrimination on the basis of age and race. Her compliant is based upon her assigned duties, which she claims are consistent with the duties of the "Sr. Consultant" classification—as opposed to her current classification as a "Consultant."

A single reference to "harassment" in her letter of complaint has not been the focus of the investigation, since in her interview she indicated that this comment was in regard to past incidents not otherwise part of her current complaint.

### II.  Pre-Investigation Actions:

No pre-investigative action was taken to the best knowledge of the investigator.  Monica Rogers and all other employees mentioned in her complaint have continued employment with HFHS as of the date of this report without limitation.

### III. The Investigation Process

I began the investigation on April 30, 2013.

I received the letter of complaint, and job description for the Consultant –OHRD and Senior Consultant- OHRD from J. Jacobs on 4/30/13

I interviewed the following witnesses:

1. Monica Rogers: May 8, 2013- 3:00pm to 4:20pm
2. Jan Harrington-Davis: May 13, 2013- 4:00pm to 4:30pm
3. Laurie Jensen: May 15, 2013- 2:30pm to 4:00pm
4. Barbara Bressack: May 15, 2013—4:00pm to 4:30pm
5. Monica Jackson-Lewis: May 17, 23103—12:00pm to 12:30pm

My notes from these interviews are in the investigation file.

### IV. Documents

I reviewed the following documents:

- Monica's Letter of Complaint dated March 25, 2013
- Consultant- OHRD job description (As received from J. Jacobs on 5/3)
- Sr. Consultant- OHRD job description (As received from J. Jacobs on 5/3)
- Consultant- OHRD job description (As received from L. Jensen via Phyllis Taylor on 5/16)
- Sr. Consultant- OHRD job description (As received from L. Jensen via Phyllis Taylor on 5/16)
- Monica Rogers' performance evaluation for 2012
- Laurie Jensen's journal entry for her meeting with Ms. Roger on 1/09/13.
- Spreadsheet showing Consultants and Sr. Consultants by Name, Birthdate, Sex, Ethnic Group, Job Title, Department, and Start Date.
- HFHS Organizational & Human Resources Development (OHRD) Organizational Chart
- Chart showing the race, education level achieved, match to credentials of job description, and explanation of placement for several white employees referenced by Ms. Rogers.

Copies of these items are in the investigation file.

I completed my investigation on May 29, 2013.

### V.  Complaint

Ms. Roger's complaint alleges discrimination on the basis of age and race.  It also makes an initial allegation of harassment.  An analysis of each follows.

#### A.  Allegations of Age Discrimination

Based upon her complaint letter, as well as her interview, Ms. Rogers' compliant of age discrimination would appear to be based upon a statement she claims was made by Laurie Jensen on two occasions.  This statement is that "I don't know about you, but at our age we only have one good job left."  Ms. Rogers claims that this comment was made in a one-on-one meeting with Laurie Jensen on January 17, 2013 and repeated in a meeting with Laurie Jensen and Jan Harrington-Davis on January 23, 2013.  In her interview, Ms. Rogers confirmed that this comment was the basis of her age discrimination claim.  She has made no further claim as to how this comment was connected to her complaint with regard to her classification.  Both Laurie Jensen and Jan Harrington-Davis deny that this comment was made.

Based upon this record, I would conclude:

a.   There is only Ms. Rogers' statement to support this comment ever being made, i.e. no other document or evidence revealed in the investigation supports such a comment being made.  Ms. Roger does not suggest that this comment was made other than in a two-person conversation (with Laurie Jensen) and in a three-party conversation (with Laurie Jensen and Jan Harrington-Davis).  Both other participants deny that this comment was made.

b.   Even if it was assumed that the comment was made on two occasions, it would appear a fleeting reference and there is no indication that it played any role in Ms. Rogers' treatment.  Both her direct supervisor (B. Bressack) and her Director (L. Jensen) categorically deny that Ms. Rogers was treated differently because of her age.  Indeed, there is no showing of any employment action that would appear to tie to her age.

c.   Moreover, the essence of the comment does not necessarily suggest or infer an inclination to discriminate on the basis of age.  The statement itself is vague.

It can be seen as either an affirmation that someone should be favored by promoted or an affirmation that someone should not be favored.

Based upon my interviews with the witnesses identified above and review of the relevant documents, there is no credible evidence to support Ms. Roger's complaint of age discrimination.

## B. Allegation of Race Discrimination

Via her complaint letter of March 25, 2013, Ms. Rogers bases her race discrimination claim on several statements made by those in management during the time period of December, 2012 to February, 2013. These statements include:

1. In talking to B. Bressack and in a staff meeting, she was told that: In order to get an evaluation of a "5" on my performance evaluation, I would have to perform duties above my current level of a "Consultant" and perform as a "Sr. Consultant."

2. In talking to Jan Harrington-Davis about her treatment, Ms. Rogers connected her treatment to her age, but was told, "It has nothing to do with your age, it's because you are black."

3. In talking to L. Jensen she was told:

   i. "We know you can do the work because you've been doing it. There is just this one little thing that keeps us from making you a Sr. Consultant"

   ii. "There isn't much difference in the work of a Sr. Consultant and Consultant and the Sr. Consultant title might be eliminated"

   iii. "I support that you should be a Sr. Consultant"

   iv. "I think we've missed a lot of opportunities to fix this

   v. "Just because my "job title was wrong now, doesn't mean it should stay wrong"

4. In talking to Ms. Monica Jackson-Lewis, Ms. Roger quotes her as saying that:

   i. There are always ways around educational requirements; and

ii.    Once Ms. Rogers had the new job responsibilities and new and old job descriptions, she would have everything she needs and Ms. Rogers could do what she needs to do.

In essence, Ms. Rogers' complaint is that she performs at the level of a Sr. Consultant. Her supervisors recognized the inequity in her being at the Consultant level. Her Director indicated that she supported Ms. Rogers being at the Sr. Consultant level. A management representative (Ms. Jan Harrington-Davis) acknowledged that her treatment is because she is black. Following all of these discussions and acknowledgements, her position remains that of a Consultant.

With regard to B1 above, the alleged comment does not relate to race- either by its terms or through implication. The comment was made both privately and publically. Ms. Rogers does not connote the comment being in reference to her race, e.g. she needed to perform at the next level because of her race. Rather, it was a statement used to describe the level of performance associated with rating under HFHS evaluation program.

With regard to B2, this comment is the only comment Ms. Rogers quotes that does blatantly concerns race. It would be a sign of racial discrimination bias if a Director level management employee explained Ms. Rogers' treatment as because of her race. In this circumstance, Ms. Jan Harrington-Davis indicated that Ms. Rogers has taken the comment significantly out of context in two ways. First, Jan Harrington-Davis statement was that her reference was made to a prior incident in Ms. Rogers' employment history in which there was a suggestion that inappropriate comments and/or actions were suffered by the employee. Jan Harrington-Davis was quite emphatic that her comments related to this prior period of time and not the current events concerning Ms. Roger' job classification. Secondly, Ms. Harrington-Davis explained that the comment she made was phrased as an affirmation of what Ms. Rogers had said, i.e. she was being treated differently in that prior incident not because of her age, but because of her race. According to Jan Harrington-Davis, she was summarizing Ms. Rogers's prior account and certainly not categorizing recent events.

HF 00432

With regard to the several statements contained within B3 above, Ms. Laurie Jensen denies making these comments. She expresses that she did not believe that Ms. Rogers was performing at a Sr. Consultant level. She further indicates that the degree required to do a Sr. Consultant's job is not a "little thing" at all. She added that Ms. Rogers would be challenged to perform the Sr. Consultant's job in areas such as "instructional design" and having the necessary background in leadership and strategic direction. Ms. Jensen suggests that she had personally supplemented the work of Ms. Rogers in supporting the Leadership Academy and Advance Leadership Academy work. Ms. Jensen's memory of the meeting is supported by a journal entry she has maintained from January 9, 2013 as well as Ms. Rogers' 2012 performance evaluation.

With regard to statement B4i above, Ms. Jackson-Lewis denies making this comments and suggests that it was Ms. Rogers who made this comment in talking about her co-worker—Brian Robertson. With regard to statement B4ii, Ms. Jackson-Lewis denied making this comment as recited by Ms. Rogers.

Through my interview with Ms. Rogers, there were several times comments concerning how many "system-wide" programs she lead. In her interview, Ms. Rogers identified Leadership Academy, Advanced Leadership Academy and the Renewal program as system-wide programs she leads. With regard to this point, neither Ms. Bressack nor Ms. Jensen believed Ms. Rogers to lead two system-wide programs. She was not credited with leading Advanced Leadership Academy and the Renewal program was described as a class and not a program.

Ms. Rogers' compliant letter also includes several other employees she alleges are white and were promoted into higher level positions although they did not have the requisite education and/or experience. I have been provided by the Employer with a chart which captures the employment history associated with these identified employees and the title/position identified by Ms. Rogers. (I have not endeavored to authenticate the correctness of the facts contained in this chart- as I deemed that outside the scope of this investigation.) For each identified employ-

ee, except one, the recited facts indicate that they did in fact have the required experience/education for their positions. The exception is Brian Robertson- who as noted above- is in the same position as Ms. Rogers, and like her, does not have his bachelor's degree. However, it would not appear that he was promoted into the Consultant job, but was placed in the job as a result of department reorganization.

### C. Hostile Work Environment

In the second sentence of her complaint letter, Ms. Rogers uses not only the word "discrimination" but "harassment." At the onset of my interview with her, I asked her to further explain if she was also complaining about harassment. She clarified that this reference was to past incidents and not the facts surrounding the current complaint. As a consequence, this investigation has not focused upon claims of a hostile work environment or harassment.

### VI. Conclusions

Having completed the investigation, reviewed my notes and having carefully reviewed all the documentation, I have concluded that there is little evidence that Monica Rogers has been discriminated against on the basis of her age or race. While Ms. Rogers is a member of a protected class on both the basis of her age and race, a prima facie case of discrimination is not made out.

First, it should also be noted that Ms. Rogers' complaint of discrimination on the basis of age and race is not connected to an active employment determination, but inaction. In other words, the facts complained of are not that Ms. Rogers applied for and was denied a Sr. Consultant job. Rather, it is her contention that her job classification remained the same when, under her complaint, she should have been advanced into the Sr. Consultant role. The action (or inaction) complained of would appear to be the failure to transfer her into a Sr. Consultant's job.

Under these undisputed facts, it is questionable whether there was any type of adverse employment action, as she has not been denied a promotion or disciplined under the facts germane to this matter. Her direct and Director-level management can describe the actions (or non-action) taken against her (perhaps best described as failing to

change her job title to "Sr. Consultant) as reasonable, since her responsibilities still fell within the job description of a "Consultant" and she did not meet the educational requirements of a Sr. Consultant. Her management can and did offer examples of responsibilities that she would struggle to successfully undertake if working in the Sr. Consultant role. They also dispute her claims that she leads two system-wide programs. There is certainly the absence of a record that demonstrates that Ms. Rogers was qualified to serve in the Sr. Consultant job, i.e. she did not have the required degree and her management believes that she lacked certain experience and skills to perform all responsibilities of the Sr. Consultant. There did not seem any pretext to these comments to the investigator.

The record seems clear that persons in the position of Sr. Consultant indeed have degrees-- and degrees at the Master's level. Ms. Rogers is one of two employees in the Consultant classification who do not have a Bachelor's degree. Ironically, Ms. Rogers complains of the other person (Brian Robertson) having been placed in the Consultant role without a degree when in fact that is her own status and employment history.

Finally, the statements she cites that could be said to evidence a racial or age bias are denied by management as either not being said or repeated inaccurately or out of context. Management denied categorically that Ms. Rogers was treated differently because of her age or race.


VII.   Recommendations

1. Based on the conclusion above, I find that this matter should be closed. Both Ms. Rogers and her direct (B. Bressack) and her Director (L. Jensen) should be advised of the investigation results.

2. Ms. Rogers' supervisor did not deny making comments concerning performing at the next level in order to earn a "5" on an evaluation. It is submitted that this is an explanation that could lead to confusion on the part of employees. Performance examples within the job classification should be used to describe excellent performance levels.

3. In the process of completing the investigation, I was afforded access to the job description of Consultant and Sr. Consultant both by HR management and by Ms. Roger's management. The copies received were not identical- although in sub-

HF 00435

stance there is not a great deal of difference. As a result, greater confusion was created than is necessary. If not already adopted, there should be a clear depository and point person for job descriptions.

Signed: _____

Date: _5/29/13_____

Notes and Observations:

Interview with Monica Rogers

May 8, 2013

3:00pm – 4:20pm

1. Monica Rogers agreed to meet with me on May 8, 2013 at my offices at 2850 W. Grand Boulevard, Detroit, MI 48202 to discuss her complaint- as embodied in a letter dated March 25, 2013 and addressed to Derick Adams- VP Human Resources Corporate Services.

2. Mr. Rogers appeared at my office on time and was alert and professional throughout the interview. While certain occurrences or reported facts were clearly emotional to relate, she maintained her composure throughout.

3. I thanked Ms. Rogers for meeting with me and explained that I had been asked to conduct an investigation of her complaint and wished to talk to her with regard to her complaint. I also explained that while Jolene Jacobs had also conducted an interview with her, there was now an interest on the part of HFHS in having an individual outside of the HFHS HR department talk to her about her complaint. I further explained that I did not want to rely upon Ms. Jacob's interview since I wanted to talk to Ms. Rogers personally.

4. I explained to Ms. Rogers that I wanted to go through her letter with great care and that I wanted to fully understand what her complaint was. I asked her to correct me if I said anything or characterized any matter different than what she intended. I also invited her throughout the interview to feel free to supplement what she tells me even after the interview is completed.

5. Ms. Rogers currently holds the position of "Consultant- OHRD." She reports that she has held this position since 2007. However, her tenure with HFHS goes back to 1981 and includes positions in the areas of Occupational Therapy, Staff Services, Corporate Retirement, and Employee Relations, among others.

6. I asked her what the main responsibilities of her current job are and she identified the following programs/processes:
   a. Leadership Development
   b. Leadership Academy
   c. Renewal Program
   d. Consulting
   e. Coaching
   f. Team Building

7. Ms. Rogers reported having approximately two years of college credit.

8. Turning to her letter of complaint of March 25th, I asked her what type of discrimination she was complaining about. He indicated discrimination on the basis of race and age. She specifically denied any complaint concerning gender discrimination.

1

ATTACHMENT C

9.  I asked Ms. Rogers about the fact that the first sentence of her letter of complaint alleges both discrimination and harassment. She indicated that her reference to harassment referred to past occurrences- not those contained in her letter.

10. Ms. Rogers indicated that her letter of complaint was actually a distilled summary of a much larger document that she has maintained and that she produced the letter as a summary with the assistance of her attorney.

11. I asked Ms. Rogers for an explanation of why her claims of discrimination were directed at Laurie Jensen. She indicated that Ms. Jensen is the Director of the OHRD, but not her current or even former direct supervisor. She related that her current direct supervisor is Barbara Bressack.

**Letter of Complaint and Interview Notes:**

12. First Paragraph: December 1, 2012 – January 8, 2013
Ms. Roger related that this paragraph represents conversation between B. Bressack and Ms. Rogers between the dates identified. This was before Ms. Bressack was her direct supervisor and they were talking in the context of who was going to be doing what in the department. Ms. Rogers reports that in the conversation that Ms. Bressack said that in order to get a "5" on evaluation that employees needed to perform above their classification. Ms. Rogers interpreted this to mean that she had to perform at a "Senior Consultant- OHRD" level—the classification above her own.  She reports saying to Ms Bressack that "I guess I'll just get a 3." She reports stating to Ms. Bressack that she was not asking for anything that had not been done for others. By this she was referencing Brian Robertson, a white make, without a degree who she reports as having been promoted to an ORHD Consultant.

13. Second Paragraph: December 1, 2012—January, 2013
Ms. Rogers cannot remember the exact date, but following her conversation reported immediately above with Ms. Bressack, Ms. Rogers went to talk to Jan Harrington-Davis- who Ms. Rogers reports as being the Director of Employee Relations and Diversity. Ms. Rogers shared Ms. Bressack's comments about getting a "5" and her concerns that she was being asked to perform at a Senior Consultant level without having the title or pay for this position.  According to Ms. Rogers, Ms. Harrington-Davis indicated that if she was being asked to perform the same duties as a Senior Consultant without the title/money that would be illegal. Ms. Rogers indicates that she suggested that perhaps this was happening because of her age. Ms. Rogers reports that Ms. Harrington-Davis laughed and stated "it has nothing to do with your age; it's because you are black."

14. Third paragraph:  January 9, 2013- Laurie Jensen's Office (11:30am)
Ms. Rogers reports that in her "update meeting" of 1/9/13 with Ms. Jensen, she was receiving her evaluation and received a score of 4.3 out of 5. She further reports that Ms. Jensen indicated that "We know you can do the work because you've been doing it" and there was "just this one little thing that keeps us from making you a Sr. Consultant." Ms. Roger's letter of complaint indicates that this was a reference to lack of credentials, but in the interview clarified

2

that this meant the lack of a degree. On this point, Ms. Rogers identified the following
employees as being Senior Consultants and Consultant and educational level as far as she knew:

Senior Consultants

- Mike                                         degree
- Cathy                                        degree
- Barbara Bressack (prior to promotion)   degree

Consultants

- Patrick                                      degree
- Liz                                          degree
- Brian                                        no degree
- Karen                                        degree
- Monica                                       no degree
- Michelle                                     degree
- Jennifer                                     degree

Ms. Rogers also reports that Ms. Jensen indicated that she didn't think that there was much
difference in the work of a Sr. Consultant and a Consultant and that she was considering eliminating
the Sr. Consultant title and everyone would be a Consultant.

15. Fourth Paragraph:  January 16, 2013 Staff Meeting

Ms. Rogers reports that during a staff meeting on 1/16/13, copies of the Consultant and Sr.
Consultant job descriptions were distributed to the team for review and feedback.
[Note I provided a copy of the jd I have been given and Ms. Rogers said she needed to check
and see if they were the same ones handed out in this meeting.]
According to Ms. Rogers, the team was told that the job descriptions would be re-written to
reflect current job duties. Ms. Jensen stated that the major difference between Consultant and
Sr. Consultant is that the Sr. Consultant leads two or more system-level programs/projects. The
Consultant leads one.
Upon inquiry, Ms. Rogers reports that she believes that several of her projects were system-
wide, including Leadership Academy and the Renewal Program.
Ms. Rogers also reports that both Monica Jackson-Lewis and Laurie Jensen repeated the
statement that to get a "5" on your performance evaluation; you must perform the duties of the
Sr. Consultant.

16. Fifth Paragraph:  January 17, 2013.  Update Meeting w/ Laurie Jensen

Ms. Rogers reports that this was an "update meeting" with Ms. Jensen.  Ms. Rogers attributes
several key comments to Ms. Jensen in this conversation, including:

- I support that you should be a Sr. Consultant
- I think we've missed a lot of opportunities to fix this.
- Just because your job title was wrong now, doesn't mean it should stay wrong.

3

○ I don't know about you but I feel that at our age we only have one good job left.

As to this last comment, upon inquiry, Ms. Rogers indicated that she interpreted that to mean that at her age she only had time for one more promotion.

According to Ms. Rogers, Ms. Jensen suggested that a meeting with Jan Harrington-Davis should be set up to see what can be done to fix this issue.  When queried, Ms. Rogers could not explain why Ms. Jensen suggested that a meeting with Jan Harrington-Davis was a way to fix the issue.

17. Sixth Paragraph:  January 23, 2013- meeting with Jan Harrington-Davis and Laurie Jensen and Monica Rogers
Ms. Rogers reports that she was surprised by the fact that Ms. Jensen started the meeting by saying the meeting's objective was to discuss how Monica feels she performs at the same level of Sr. Consultant.  She reports being surprised since she believed that Ms. Jensen called the meeting to "fix" the issue.  Ms. Rogers reports that Ms. Jensen repeats the comment that "at our age we only have one good job left."
Ms. Rogers reports that Ms. Harrington-Davis indicated that she did not support Ms. Rogers getting a change in title, but that she agreed that Ms. Rogers perform at the senior level.  Ms. Harrington-Davis suggests writing a job description based upon what Ms. Rogers duties were; or change/modify current Sr. Consultant job description to say "degree preferred."  Ms. Jensen didn't like either suggestion.

18. Seventh Paragraph:  January 24, 2013.  Meeting with co-workers
Ms. Rogers reports that on 1/24/13 her co-workers (Brian Robertson, Liz Mallory, Patrick Payne, Karen Giovannini and Jennifer Landers met to discuss the job duties of the OHRD Consultant.  Based upon the differences in level of duties, the group did not reach any conclusion.

19. Eighth Paragraph:  January 29, 2013.  ALA/LA partnership Session.
Ms. Rogers reports that toward the end of this session her direct supervisor, Barbara Bressack, told Ms. Rogers that her current job duties would not be changing and that coaching and consulting would be an additional requirement.  This last comment, in Ms. Rogers view, was in response to her asking which of her job responsibilities would be reduced.

20. Ninth Paragraph:  HFHS University Staff Meeting
Ms. Rogers indicates that at this meeting the staff received an updated copy of the Consultant's job description.  Upon inquiry, Ms. Rogers indicates that the Consultant job description was changed to now say that "two or more" major programs are to be handled by the Consultant.

21. Tenth Paragraph:  February 4, 2103.
Ms. Rogers reports that on 2/4/13, her prior supervisor, Monica Jackson Lewis came to Ms. Rogers office to "provide counseling."  Upon inquiry, Ms. Rogers believe this was due to the fact that she gave the appearance of being disappointed with the treatment of her job description.  Ms. Roger reports that Ms. Monica Jackson-Lewis made the following comments:
○ Ms. Roger should do whatever Laurie and Barbara asked her to do
○ There are ways around the education a requirement, we have done it before

4

- When Ms. Rogers has both the old and new job descriptions, she will have all that she needs to do what you have to do

22. Eleventh Paragraph: **February 20, 2013. Meeting with Barbara Bressack**

Ms. Rogers reports that in this meeting with her direct supervisor, her 2013 performance goals were established. She indicates that her duties remain as equal to a Sr. Consultant.

Ms. Rogers concludes her complaint by indicating that this treatment is unlawful because she is being treated differently than white counterparts. She identifies the following as white employees for which an exception was made with regard to education or experience level:

- Brian Robertson—OHRD Consultant
- Patti Sanburn—HR Director
- Carol Bridges—Director Service Excellence, Volunteer Services
- Tarra Bufford—her Analyst—Experience in lieu of education
- Nicole Logal—Sr. Consultant, Compensation—Master preferred
- Debra Temrowski—HR Director—Experience number of years reduced.

In her letter of complaint, Ms. Roger indicates that "on more than one occasion, statement referencing my age have been made." Upon inquiry, she did not have anything to add to this complaint—other than the statement repeated above concerning one last job left.

Ms. Roger claim is that:

"These issues of race and age discrimination, promotion, job assignment and equal pay, must be addressed and the unfair treatment I have experienced must be made right."

**General Observations:**

Ms. Rogers present herself well and her concerns with her treatment would appear sincere and heartfelt.

5

Notes and Observations

Interview with Laurie Jensen

May 15, 2013

2:30 to 4:00pm

1. Laurie Jensen agreed to meet with me on May 15, 2013 to discuss the discrimination complaint filed by Monica Rogers.
2. Ms. Jensen reported that she holds the position of Director, Organizational and HR Development, HFHS University.  She reports to having been in essentially this job for 7 years, including one year in an interim capacity.
3. Prior to this position, Ms. Jensen worked as a Sr. Representative for Organizational Development.  She has worked at HFHS for 9 years in total.
4. Ms. Jensen did not dispute Ms. Rogers's statement that they had a discussion concerning job responsibilities in an update meeting on January 9, 2013.  During this discussion, Ms. Roger received her performance evaluation.  Ms. Jensen gave Ms. Rogers an evaluation of 4.3- which Ms. Jensen characterized as "extremely high."  Ms. Jensen indicates that they had been non-verbal clues that Ms. Rogers was not happy and that she drew her out as to what her concerns were.  Ms. Rogers indicated that she believed she was doing the work of a Sr. Consultant, but remained classified as a Consultant.  Ms. Jensen did not agree with this perception.
5. Ms. Jensen denied saying in this meeting that "we know you can do the work because you've been doing it," and that she would not have characterized Ms. Rogers has having been doing Sr. Consultant work.  Rather, Ms. Jensen opined that Ms. Rogers wasn't capable of doing Sr. Consultant's work.  While she had to step into a project when a Sr. Consultant left the staff, others including Ms. Jensen had to provide guidance and direction.
6. Ms. Jensen denied saying in this meeting that "just this one little thing that keeps us from making you a Sr. Consultant." (Referring to the fact that Ms. Rogers did not have a degree.) Ms. Jensen indicates that she does not consider a degree a "little thing" at all.  She notes that certain features of the Sr. Consultant position would be challenging to Ms. Roger.  An example given was the "instructional design" aspect of the Sr. Consultant job.  Moreover, Ms. Rogers did not have leadership experience as part of her career.
7. Ms. Jensen suggested that Ms. Rogers has taken out of context her comments about eliminating the Sr. Consultant position.  Ms. Jensen did indicate that they would be taking a fresh look at the job descriptions.
8. Turning to a staff meeting identified by Ms. Rogers as being on January 16, 2103, Ms. Jensen denies limiting the differences between Sr. Consultant and Consultant to whether the position has one or two system-level programs/projects.  Rather, she relates that it was providing the overall strategic direction for one or more system-level projects that was one of the distinctions.

1

**ATTACHMENT D**

HF 00414

Consultants do handle various components of system-wide programs, but do not have the overall strategic direction for the programs.

9.  When asked if Monica led two or more system-wide programs in January, 2013, Ms. Jensen indicated "no." She provides leadership to Leadership Academy and support to the Advanced Leadership Academy. She does not provide strategic direction or the necessary "creative element." Asked about the "renewal" program, Ms. Jensen indicated that this was a class-not a system-wide program.

10. Ms. Jensen denied saying in this staff meeting that in order to get a "5" on your evaluation, you had to perform the duties of the Sr. Consultant. Rather, she would have expressed that you have to do more than the minimum of your job.

11. With regard to an "update meeting" Ms. Rogers's reports took place on January 17, 2013, Ms. Jensen is uncertain whether that is the correct date, but knows that they met again before their conversation with Jan Harrington-Davis.

12. Ms. Jensen denied saying in this meeting that "we've missed a lot of opportunities to fix this."

13. Ms. Jensen denied saying in this meeting that "I don't know about you, but I feel that at our age we only have one good job left." Rather, Ms. Jensen reports that she knew from Ms. Rogers' comments that she was planning to retire. She did express support for providing her work with which she was comfortable prior to retirement.

14. Ms. Jensen denied saying in this meeting that there was not much difference in the work of a Sr. Consultant and a Consultant and that she was considering eliminating the Sr. Consultant title. Rather, she recalls taking about the impending merger with Beaumont and that this event may give rise to re-consider job duties.

15. Ms. Jensen denied saying in this meeting that just because your job title was wrong now, doesn't mean it should stay wrong. She did not use the word "wrong" but was open to understand any issues with the job descriptions.

16. Ms. Jensen denied saying in this meeting that she said that she would support Ms. Rogers in getting the Sr. Consultant job in meeting with Jan Harrington-Davis. Rather, she recalls saying that she would support Jan's approach to this issue. Ms. Jensen reports that she was not seeing an inequity in job responsibility as expressed by Ms. Rogers. However, she was willing to get a third party review of the situation and would support that view.

17. Ms. Jensen does not deny saying in this meeting that they should consult with Jan Harrington-Davis. She was looking for another point of view on this issue.

18. Ms. Jensen supports Ms. Roger statement that a meeting with Jan Harrington-Davis took place on January 23, 2013. Ms. Jensen reports that Ms. Rogers set up the meeting.

19. Ms. Jensen denied saying in this meeting that the objective was to discuss how Monica feels she performs at the same level of a Sr. Consultant. Rather, she reports that her objective was for Monica to express her feeling of unfairness and to ask Jan to think about solutions with them- as an objective third party.

20. Ms. Jensen again denied saying in this meeting that "I don't know about you, but I feel that at our age we only have one good job left."

2

21. Ms. Jensen did not deny that Jan Harrington-Davis did suggest that Monica Rogers performs at a high level. She agreed that there are certain aspects of the Consultant job that Monica performs very well.

22. As to suggestions made by Jan Harrington-Davis, Ms. Jensen:
    - Agrees that waiting to see how the merger impacted job description was a possible solution;
    - Doesn't recall her saying that the Consultant and Sr. Consultant position should be clarified, but doesn't disagree and notes that they were, in fact, working on that;
    - Doesn't recall the suggestion that the education requirement of the Sr. Consultant job description be change to make it "preferable."

23. Ms. Jensen also offers that throughout this conversation, Jan Harrington-Davis was trying to ascertain from Ms. Rogers whether it was the Sr. Consultant title or the compensation that was the irritant to her. Ms. Jensen recalls that Ms. Rogers never answered these questions.

24. When asked in summary if Ms. Roger met the qualifications for the Sr. Consultant job in January, 2013, Ms. Jensen indicated "no." She added that she neither had the required educational background nor she did oversee system-wide initiatives. Ms. Jensen gave the following examples of system-wide programs:
    - Performance Management
    - Employee Engagement
    - Physician Development
    - Succession Planning

25. When asked what had been done to resolve this issue for Monica, Ms. Jensen suggested that it was her understanding that Monica had accepted waiting to see if the merger lead to different job duties. She also noted that she had pulled Monica into an initiative on cultural change that she thought was engaging for her.

26. When asked if Monica Rogers was treated differently than others because of her race, Ms. Jensen responded, "no."

27. When asked if Monica Rogers was treated differently than others because of her age, Ms. Jensen responded, "no."

28. When asked if Monica Rogers ever complained of a hostile work environment, Ms. Jensen responded, "no."

3

HF 00416

Notes and Observations

Interview with Barbara Bressack

May 15, 2013

4:00 to 4:30pm

1. Barbara Bressack agreed to meet with me on May 15, 2013 to discuss the discrimination complaint filed by Monica Rogers.

2. Ms. Bressack reported that she holds the position of Manager of Leadership Development, OHRD. She reports to having been in this job for only 5 months, starting essentially in the New Year.

3. Prior to this position, Ms. Bressack worked as a Sr. Consultant-OHRD. She was promoted from the Consultant job to the Sr. Consultant job. She has worked at HFHS for 9 years in total.

4. Ms. Bressack did not dispute Ms. Rogers's statement that they had a discussion concerning job responsibilities in January, 2013. As she recalls the discussion, she was asking Ms. Rogers what job duties she was most interested in. Ms. Rogers expressed dissatisfaction with her work load versus others. Ms. Bressack was most familiar with the work load of Jennifer Landers and didn't believe there was any inequity disfavoring Monica Rogers.

5. Ms. Bressack indicated that her comment was taken out of context with regard to having to perform at a Sr. Consultant's level in order to get a "5" as a Consultant. Rather, Ms. Bressack indicates that her personal philosophy is that one should always try to perform at a level above your position. She believes that she may have communicated this philosophy to Ms. Rogers.

6. Turning to a staff meeting identified by Ms. Rogers as being on January 16, 2103, Ms. Bressack indicates that Laurie Jensen led the meeting and handed out the job descriptions. The Sr. Consultants and Consultants were both asked to work on updates to reflect current duties. Ms. Jensen also did indicate that a main difference between a Sr. Consultant and a Consultant was the leadership of two system-wide projects/program

7. In responding to what system-wide programs Monica Rogers led in January, 2013, Ms. Bressack indicated that she did lead Leadership Academy, but only supported Advance Leadership Academy. The "renewal" was only a class.

8. Ms. Bressack did not recall a conversation with Monica Rogers at the ALA/LA Partnership session on January 29, 2013 where Monica Rogers claims that Ms. Bressack told Monica that her job responsibilities would not change. As to Ms. Rogers claim that Ms. Bressack also said that coaching and counseling would be additional responsibilities, Ms. Bressack indicates that her communication was that such responsibilities would continue to be part of her job.

9. When asked about the claim that at a HFHS University Staff meeting on January 31, 2013 that Monica Rogers received a new job description that now contained the indication that a Sr. Consultant would have responsibility for "two or more" system-wide programs, Ms. Bressack indicated that this could well be correct.

1

ATTACHMENT F

HF 00422

10. Ms. Bressack does not contest Monica Rogers claim that in meeting with her on February 20, 2013, her performance goals were established and that her job title did not change.

11. When asked if Monica Rogers was performing the job duties equal to a Sr. Consultant in January, 2013, Ms. Bressack indicated "no." She did not provide strategic oversight and was not the direct point of contact for senior management for her projects.

12. When asked if Monica Rogers met the qualification for a Sr. Consultant in January, 2013, Ms. Bressack indicated "no." She did not have the required educational qualifications.

13. When asked if Monica Rogers was treated differently than others because of her race, Ms. Bressack responded, "I did not."

14. When asked if Monica Rogers was treated differently than others because of her age, Ms. Bressack responded, "I did not."

15. When asked if Monica Rogers ever complained of a hostile work environment, Ms. Bressack responded, "no."

2

HF 00423

Notes and Observations

<mark>Interview with Jan Harrington-Davis</mark>

Harrington-Davis May 13, 2013

4:00 to 4:30 pm

D. Champney's Office

1. Jan Harrington-Davis was interviewed on May 13, 2013 with regard to the discrimination complaint filed by Monica Rogers.
2. Ms. Harrington-Davis is the Director of Employee Relations, labor Relation, Compliance and Work Force Diversity. She reports having been in this position just shy of two years. She has work within the HFHS since 2001. Among her varied responsibilities is the Affirmative Action Program for which she serves as the Diversity Officer.
3. Ms. Harrington-Davis recalls talking to Monica Rogers about her concerns regard discrimination on several occasions. These included one-on-one meetings, meeting with both her and her management and other more brief conversations.
4. Ms. Harrington-Davis acknowledges Monica Rogers' recount that they had a one-on-one meeting in the time frame between December 1 and January 31, 2013 concerning her concerns. Ms. Harrington-Davis recalls that part of their conversation related to past issues involving Monica and a former HR VP in which there was an allegation that he would not let her work on a matter because of her race. Ms. Harrington-Davis believes Monica filed a formal complaint with regard to this matter.

   Ms. Harrington-Davis relates that this conversation also dealt with Monica's concerns that she was performing the same work as those in the Sr. Consultant position. When asked if she had indicated to Monica that her current discrimination claim "has nothing to do with your age, it's because of your race" Ms. Harrington-Davis indicates that: (1)she was referring to this past incident; (2) she was asking a question as opposed to making a statement; and (3) she does not recall any reference to age.
5. Ms. Harrington-Davis acknowledges that Monica Roger's statement that there was a meeting on January 23, 2013 with Laurie Jensen, Monica Rogers and herself is probably correct, since Ms. Harrington-Davis recalls her sister having a medical procedure at this time. Ms. Harrington-Davis does not know exactly how this meeting was scheduled, but remembers that Monica Rogers had called her to tell her that such a meeting was scheduled. Ms. Harrington-Davis recalls that Monica Rogers talked about doing the job of both the Consultant and Sr. Consultant jobs and that she compared herself to others in the two positions. Ms. Harrington-Davis also acknowledges that she did indicate her opinion that Monica Rogers was working at a Sr. Consultant level and that she felt the job description should be amended to clarify the two positions, i.e. Consultant and Sr. Consultant and/or have the Sr. Consultant job description have "degree preferred" language.  However, Ms. Harrington-Davis did not recommend Monica

**ATTACHMENT G**

HF 00424

being place into the Sr. Consultant job as written, since the job description required a master degree and Monica did not have a college degree.   Ms. Harrington-Davis recalls that Laurie Jensen was not receptive to the suggestions with regard to changing clarifying the job descriptions. Ms. Harrington-Davis also recalls suggesting that perhaps the pending merger with Beaumont might provide an opportunity to address this situation or that Monica could acquire her degree.

6.   Ms. Harrington-Davis does not recall any statement being repeated in this conversation related to "having only one good job left."

7.   Ms. Harrington-Davis also recalls a short conversation with Monica Rogers a week or two following the meeting on January 23, 2013.  She remembers expressing understanding of Monica's concerns, but also expressing to her that either the job description needs to change or she needed to acquire a degree.

Notes and Observations

<mark>Interview with Monica Jackson-Lewis</mark>

May 17, 2013

1. Monica Jackson-Lewis agreed to meet with me on May 17, 2013 to discuss the discrimination complaint filed by Monica Rogers.

2. Ms. Jackson-Lewis reported that she currently hold the position of Director of Retention, Training and Quality for Client Services at Health Alliance Plan. She has held this position since February 8, 2013.

3. Prior to her position with HAP, Ms. Jackson-Lewis was the Manager of Henry Ford University, Employee Development. She held this position for 13 years and has worked within the HFHS system for 18 years.

4. Ms. Jackson-Lewis denies that in a staff meeting on January 16, 2013 she said that to get a "5" on your performance review as a Consultant that you had to perform the duties of a Sr. Consultant. Rather, she would have expressed that to get above a "3" would you have to perform above what you normally do.

5. Ms. Jackson-Lewis agrees with Ms. Rogers that she had a one-on-one meeting with Ms. Rogers on February, 4, 2013. She indicates that Ms. Rogers asked to talk to her prior to her reporting to her new job at HAP with regard to recent changes in Ms. Rogers' department.
   Ms. Jackson-Lewis explained that Ms. Rogers used to report to her working in the Employment Engagement area, but she had asked and had been placed in the Leadership Development area.

6. Ms. Jackson-Lewis also volunteered that while working for her; Ms. Rogers had some performance issues and was in fact on a Performance Improvement Plan due in large part to her difficulty in accepting Ms. Jackson-Lewis' management. However, her performance improved and she and Ms. Laurie Jensen granted Ms. Rogers request to be place in Leadership Development.

7. At the February 4th meeting, Ms. Jackson-Lewis reports that Ms. Rogers was concerned that she was performing work (Leadership Academy) that used to be led by a Sr. Consultant, but she remained a Consultant. Ms. Jackson-Lewis reports that she told Ms. Rogers that this was likely a result of the structural changes in her department. Ms. Jackson-Lewis further reports that she indicated to Ms. Rogers that she couldn't be put into the Sr. Consultant position because she didn't have a degree. When Ms. Rogers asked her what she should do, Ms. Jackson-Lewis responded by saying "just do your job."

8. With regard to Ms. Roger's statement that Ms. Jackson-Lewis had said that "there are always ways around the education requirement, we have done it before," Ms. Jackson-Lewis denies every saying that. Ms. Jackson-Lewis believed Ms. Roger might have been referring to Brian Robertson- a white male- who is a Consultant, but who doesn't have a degree. Ms. Jackson-Lewis relates that it was Ms. Roger who actually made this statement concerning the educational requirement.

ATTACHMENT H

9. With regard to Ms. Roger's statement that Ms. Jackson-Lewis had said that once you have the new job responsibilities in writing, copies of the new job description and copies of the old job description, this would give her everything she needs and she would do what you have to do, Ms. Jackson-Lewis denies making this statement in this meeting. Ms. Jackson-Lewis volunteered that Ms. Rogers referenced a prior incident of sexual harassment at HFHS and that she may now feel a sense of entitlement based on those facts. Ms. Rogers said she had talked to her son and he had advised her to talk to an attorney. Ms. Jackson-Lewis suggested that Ms. Rogers do her job.

10. When asked if Ms. Rogers was performing at the level of Sr. Consultant in January, 2013, Ms. Jackson-Lewis said that she was performing as a Consultant, not a Sr. Consultant.

11. When asked if Ms. Rogers was qualified to be a Sr. Consultant in January, 2013, Ms. Jackson-Lewis indicated that she was qualified except for her educational level.

12. When asked in Ms. Roger was treated unfairly because of her race, Ms. Jackson-Lewis indicated no.

13. When asked in Ms. Roger was treated unfairly because of her age, Ms. Jackson-Lewis indicated no.

HF 00427



## JOB DESCRIPTION

| | |
|---|---|
| Job Title: | Consultant - OHRD |
| Job Code: | F01207 |
| FLSA Status: | Exempt |
| Date: | February 2007 |

### GENERAL SUMMARY:

Under limited supervision, conducts training/development needs analyses and assessments on an organizational, and/or individual basis, and develops and implements specified training and development programs and initiatives to meet assessed needs.

### PRINCIPAL DUTIES AND RESPONSIBILITIES:

1. Conducts individual, group, and organization-based training and development needs analyses and assessments.

2. Based on assessed need, plans, develops, and delivers or coordinates the delivery of individual and/or group training and instructional programs, encompassing a wide range of technical, operational, management, and/or other skills areas.

3. Develops or oversees the development of training curricula; formulates or reviews training outlines, and determines appropriate instructional methodologies and formats; evaluates and recommends incorporation of vendor programs, as appropriate to meet overall training goals and objectives.

4. Work with TES and instructional design team to develop and execute System solutions.

5. Oversees and coordinates the development and preparation of teaching and visual aids, instructional materials, computer tutorials, and reference materials appropriate to specific program objectives.

6. As appropriate to the individual position, coordinates, facilitates, and/or conducts specified development activities, such as planning retreats, team building programs, organization analyses, or restructuring exercises.

7. Evaluates effectiveness of training and development programs and utilizes relevant evaluation data to revise or recommend changes in instructional objectives and methods.

**ATTACHMENT J**

HF 00437

8. Coordinates work flow and administrative activities necessary to deliver and document unit programs and activities.

9. Provides input and assists in the planning, assessment, and implementation of organizational goals and objectives, in line with overall department goals and objectives.

10. Performs miscellaneous job-related duties as assigned.

EDUCATION/EXPERIENCE REQUIRED:
- Bachelor's degree
- At least 3 years of work experience that can be demonstrated to be applicable to the duties listed in the job description.
- Knowledge and understanding of adult learning principles, and of a wide range of training methods, techniques, and formats.
- Skill in organizing resources and establishing priorities.
- Ability to determine training objectives.
- Ability to provide technical leadership to external and internal constituencies.
- Knowledge of organization development principles and processes, methods, and techniques.
- Advanced verbal and written communication skills.
- Skills in facilitating and leading strategic planning and organizational development interventions.
- Knowledge of curriculum development and preparation procedures.
- Ability to interpret and assess training and development needs and to develop appropriate and creative responses.
- Ability to design, develop, implement, and evaluate training plans, curricula, and methodology.
- Strong interpersonal and communication skills and the ability to work effectively with a wide range of constituencies in a diverse community.

Must meet or exceed core customer service responsibilities, standards and behaviors as outlined in the HFHS' Customer Service Policy and summarized below:

| | |
|---|---|
| Communication | Ownership |
| Understanding | Motivation |
| Sensitivity | Excellence |
| Teamwork | Respect |

Must practice the customer skills as provided through on-going training and in-services.

HF 00438

TITLE: <u>Consultant – OHRD  F01207</u>                                    Page: 3 of 3

Must possess the following personal qualities:

- Be self-directed
- Be flexible and committed to the team concept
- Demonstrate teamwork, initiative and willingness to learn
- Be open to new learning experiences
- Accepts and respects diversity without judgment
- Demonstrates customer service values

PHYSICAL DEMANDS/WORKING CONDITIONS:

Normal office environment with minimal exposure to noise, dust, or extreme temperatures.

Moderate physical activity. Requires handling of average-weight objects up to 25 pounds or standing and/or walking for more than four (4) hours per day.

APPROVED BY:

DEPARTMENT HEAD: _____      DATE:_____

HUMAN RESOURCES: _____      DATE:_____

The above statements are intended to describe the general nature and level of work being performed by people assigned to this classification.  They are not intended to be construed as an exhaustive list of all responsibilities and duties of personnel so classified.



## JOB DESCRIPTION

| Job Title: | Sr Consultant - OHRD |
| --- | --- |
| Job Code: | F01208 |
| FLSA Status: | Exempt |
| Date: | February 2007 |

GENERAL SUMMARY:

Provide project management, leadership coaching and organizational development expertise to achieve service and performance excellence across Henry Ford Health System. Works with leaders to bridge the gap between the strategic vision and the organization's current performance and culture. Includes organizational assessment/analysis, leadership development, change management, organizational design/structure, customer service, process improvement, organizational learning and strategy execution.

PRINCIPAL DUTIES AND RESPONSIBILITIES:

1. Support/manage System wide HR planning initiatives such as performance management, and succession planning.

2. Design, build and oversee leadership development programs.

3. Supports/manage development and execution of the HFHS Leadership Academy for top performers.

4. Supports/manage development and execution of the HFHS New Leader Orientation.

5. Works with business unit leaders to support System integration and the Henry Ford Experience.

6. Facilitates leadership assessments and development plans.

7. Consults with senior leadership on high priority organizational and change initiatives and interventions.

8. Support/manage executive coaching and mentoring relationships and programs.

9. Performs miscellaneous job-related duties as assigned.

ATTACHMENT K

HF 00440

TITLE: Sr Consultant – OHRD  F01208                                    Page: 2 of 3

## EDUCATION/EXPERIENCE REQUIRED:

- MBA, MA, or MS in Organizational Development (OD), Human Resources or related field.

- Three to five year's management/or Human Resource professional level experience.

- Strong interpersonal, communication (oral, written and listening) and presentation skills. Applied knowledge of OD theories, methods and processes including change management, organizational behavior, performance management and leader development.

- Ability to interact with senior leadership

- Excellent project management skills

- Excellent presentation and facilitation skills

- Excellent written and communication skills

- Skilled in organizing and integrating information

- Extremely high standards for personal integrity; ability to preserve confidentiality of highly sensitive information.

- Self-directed and takes initiative.


Must meet or exceed core customer service responsibilities, standards and behaviors as outlined in the HFHS' Customer Service Policy and summarized below:

|  |  |
|---|---|
| • Communication | • Ownership |
| • Understanding | • Motivation |
| • Sensitivity | • Excellence |
| • Teamwork | • Respect |

Must practice the customer skills as provided through on-going training and in-services.

Must possess the following personal qualities:

- Be self-directed
- Be flexible and committed to the team concept
- Demonstrate teamwork, initiative and willingness to learn
- Be open to new learning experiences
- Accepts and respects diversity without judgment
- Demonstrates customer service values

TITLE: Sr Consultant – OHRD  F01208

Page: 3 of 3

PHYSICAL DEMANDS/WORKING CONDITIONS:

Normal office environment with minimal exposure to noise, dust, or extreme temperatures. Moderate physical activity. Requires handling of average-weight objects up to 25 pounds or standing and/or walking for more than four (4) hours per day.

APPROVED BY:

DEPARTMENT HEAD: _____ DATE:_____

HUMAN RESOURCES: _____ DATE:_____

The above statements are intended to describe the general nature and level of work being performed by people assigned to this classification. They are not intended to be construed as an exhaustive list of all responsibilities and duties of personnel so classified.

HF 00442



## JOB DESCRIPTION

| | |
|---|---|
| Job Title: | **Sr Consultant - OHRD** |
| Department: | Organizational Human Resources Development |
| Location: | 1 Ford Place |
| Reports To: | Director Organizational and HR Development, Engage and Retain Center of Excellence |
| FLSA Status: | Exempt |
| Prepared By: | |
| Prepared Date: | **February 2010** |
| Job Code: | F01208 |
| Pay Grade: | B70 |

### GENERAL SUMMARY:

Provide project management, leadership coaching and organizational development expertise to achieve service and performance excellence across Henry Ford Health System. Works with leaders to bridge the gap between the strategic vision and the organization's current performance and culture. Includes organizational assessment/analysis, leadership development, change management, organizational design/structure, customer service, process improvement, organizational learning and strategy execution.

### PRINCIPAL DUTIES AND RESPONSIBILITIES:

1. Support/manages/ and/or consults on System wide HR planning initiatives such as performance management, employee engagement, retention strategies, onboarding, and succession planning.

2. Design, build and oversee leadership development programs.

3. Designs and executes Organizational Development Consulting model/initiative.

4. Designs and executes HFHS Coaching strategy.

5. Works with business unit leaders to support System integration and the Henry Ford Experience.

6. Facilitates leadership assessments and development plans.

7. Facilitates strategic planning, team building, and change management retreats.

8. Consults with senior leadership on high priority organizational and change initiatives and interventions.

9. Support/manage executive coaching and mentoring relationships and programs

TITLE: Sr Consultant – OHRD_F01208                    Page: 2 of 3

10. Performs miscellaneous job-related duties as assigned that are aligned to Department's achievement of goals and business outcomes for HFHS.

KNOWLEDGE, SKILLS AND ABILITIES REQUIRED:

MINIMUM EDUCATION;
MBA, MA, or MS in Organizational Development (OD), Human Resources or related field.

MINIMUM EXPERIENCE; PREFERRED EXPERIENCE
Three to five year's management/or Human Resource professional level experience.

Strong interpersonal, communication (oral, written and listening) and presentation skills. Applied knowledge of OD theories, methods and processes including change management, organizational behavior, performance management and leader development.

- Ability to interact with senior leadership

- Excellent project management skills

- Excellent presentation and facilitation skills

- Excellent written and communication skills

- Skilled in organizing and integrating information

- Extremely high standards for personal integrity; ability to preserve confidentiality of highly sensitive information.

- Self-directed and takes initiative.

Must meet or exceed core customer service responsibilities, standards and behaviors as outlined in the HFHS' Customer Service Policy and summarized below:

| | |
|---|---|
| Communication | Ownership |
| Understanding | Motivation |
| Sensitivity | Excellence |
| Teamwork | Respect |

Must practice the customer skills as provided through on-going training and inservices.

Must possess the following personal qualities:

- Be self-directed
- Be flexible and committed to the team concept
- Demonstrate teamwork, initiative and willingness to learn
- Be open to new learning experiences

TITLE: Sr Consultant – OHRD  F01208                                    Page: 3 of 3

- Accepts and respects diversity without judgment
- Demonstrates customer service values

WORKING CONDITIONS:

Normal office environment with minimal exposure to noise, dust, or extreme temperatures. Moderate physical activity. Requires handling of average-weight objects up to 25 pounds or standing and/or walking for more than four (4) hours per day.

APPROVED BY:

DEPARTMENT HEAD:        _____        DATE:_____

HUMAN RESOURCES:        _____        DATE:_____

The above statements are intended to describe the general nature and level of work being performed by people assigned to this classification. They are not intended to be construed as an exhaustive list of all responsibilities and duties of personnel so classified.

HF 00445

Job Title: Consultant - OHRD
Job Code: F01207
FLSA Status: Exempt
Date: February 2007 (revised 1/2013)

GENERAL SUMMARY:

Under the direction of the supervisor of the department and with high degree of autonomy, the OHRD Consultant will work independently or as a Project leader to manage work of a medium to complex nature. The OHRD consultant will plan, organize and coordinate project task completions with individuals and teams of professionals at other levels, as well leaders and outside contractors while developing solutions for business opportunities/ challenges. They will team up with experts from other disciplines inside and outside HFHS; conducts training/development needs analyses and assessments on an organizational, and/or individual basis, and develops and implements specified training and development programs and initiatives to meet assessed needs; and work effectively with other members of team and promote a healthy high performing work environment.

PRINCIPAL DUTIES AND RESPONSIBILITIES:

1. Responsible for leading or supporting one or more project teams/initiatives.

2. Conducts individual, group, and organization-based training and development, needs analyses, and assessments. Facilitates training or programs as needed.

3.. Based on assessed need, plans, develops, and delivers or coordinates the delivery of individual and/or group training and instructional programs, encompassing a wide range of technical, operational, management, and/or other skills areas.

4.. Develops or oversees the development of training curricula; formulates or reviews training outlines, and determines appropriate instructional methodologies and formats; evaluates and recommends incorporation of vendor programs, as appropriate to meet overall training goals and objectives.

5. Oversees and coordinates the development and preparation of teaching and visual aids, instructional materials, computer tutorials, and reference materials appropriate to specific program objectives.

6. Coordinates, facilitates, and/or conducts specified development activities, such as planning retreats, team building programs, organization analyses, or restructuring exercises.

7. Evaluates effectiveness of training and development programs and utilizes relevant evaluation data to revise or recommend changes in instructional objectives and methods.

8. Coordinates work flow and administrative activities necessary to deliver and document unit programs and activities.

9. Provides input and assists in the planning, assessment, and implementation of organizational goals and objectives, in line with overall department goals and objectives.

**ATTACHMENT M**

HF 00446

10. Performs miscellaneous job-related duties as assigned.

EDUCATION/EXPERIENCE REQUIRED:

Bachelor's degree

At least 3 years of work experience that can be demonstrated to be applicable to the duties listed in the job description.

Knowledge and understanding of adult learning principles, and of a wide range of training methods, techniques, and formats.

Skill in organizing resources and establishing priorities.

Ability to determine training objectives.

Ability to provide technical leadership to external and internal constituencies.

Knowledge of organization development principles and processes, methods, and techniques.

Advanced verbal and written communication skills.

Skills in facilitating and leading strategic planning and organizational development interventions.

Knowledge of curriculum development and preparation procedures.

Ability to interpret and assess training and development needs and to develop appropriate and creative responses.

Ability to design, develop, implement, and evaluate training plans, curricula, and methodology.

Strong interpersonal and communication skills and the ability to work effectively with a wide range of constituencies in a diverse community.

Must meet or exceed core customer service responsibilities, standards and behaviors as outlined in the HFHS' Customer Service Policy and summarized below:
☐ Communication ☐ Ownership
☐ Understanding ☐ Motivation
☐ Sensitivity ☐ Excellence
☐ Teamwork ☐ Respect
Must practice the customer skills as provided through on-going training and in-services.

HF 00447

Must possess the following personal qualities:
☐ Be self-directed
☐ Be flexible and committed to the team concept
☐ Demonstrate teamwork, initiative and willingness to learn
☐ Be open to new learning experiences
☐ Accepts and respects diversity without judgment
☐ Demonstrates customer service values
PHYSICAL DEMANDS/WORKING CONDITIONS:
Normal office environment with minimal exposure to noise, dust, or extreme temperatures.
Moderate physical activity. Requires handling of average-weight objects up to 25
pounds or standing and/or walking for more than four (4) hours per day.

HF 00448

2012 Employee Performance Plan & Review for Monica J. Rogers                    Page 1 of 5

## 2012 Employee Performance Plan & Review for Monica J. Rogers

Employee Performance Plan & Review, Instruction

| | |
|---|---|
| Last Name: | Rogers |
| First Name: | Monica |
| Title: | Consultant - OHRO |
| Department: | DHRO |
| Location: | OFP |

You will use this form three times throughout the year:

**Goal Setting:** At the beginning of the calendar year set performance goals, review competencies and create individual development plan.

**Mid-Year Review:** You and your supervisor will update the status of each performance goal and provide comments about your progress and performance on each goal and competency to date.

**Annual Review:** You will conduct a self-evaluation and provide comments for each of your goals and competencies. Your supervisor will rate you on each performance goal and competency and provide comments which will be used to calculate your overall performance score for the review cycle.

You and your supervisor can also refer back to this document at other times as a guide to continued performance and development.

Originator: HFHS Performance Management
Review Period: 01/01/2012 - 12/31/2012
Due Date: 01/15/2013

Review the competencies and use the comment section as needed to write any specific goal expectation or action item.

### Maintain a Positive Attitude

Consistently Meets These Expectations by: •Displaying a positive (cheerful, helpful) attitude in their actions resulting in creating a positive lasting impression. •Being sincere, courteous and friendly in interacting with patients, customers, co-workers, and physicians. •Practicing department etiquette standards and not engaging in negative/unconstructive situations or conversations. •Remaining balanced and controlled in difficult situations. •Responding well to changing circumstances/situations/processes. •Being approachable to co-workers and providing support as needed. Behaviors for Ratings 5, 4, 2, 1

**Rating by Laurie Jensen:**

Supervisor: 4.0 - Exceeds Expectations

**Supervisor Comments:**
Agree with Monica's qualifying description. She has kept a positive attitude through a challenging year.

**Rating by Monica J. Rogers:**

Employee: 4.0 - Exceeds Expectations

**Employee Comments:**
Consistently displayed a "can do" attitude. Maintained a positive attitude and created a positive impression • Displayed a sincere friendly disposition when interacting with customers and co-workers. Remained balanced and controlled in difficult situations • Responded well to several changes in staffing and process change • approachable to all co-workers and provided help where needed.
- Acknowledging and appreciating others for their contributions and others' work (e.g., Drop in Bucket, Performance Note).
- Being able to create/keep a team's "can-do" attitude.
- Approaching work in a way that makes others want to work with me.

### Take Ownership and Be Accountable

Consistently Meets These Expectations by: •Assuming responsibility for their performance and individual development goals (e.g., HFHS University classes, etc.) by completing on the due date. •Taking full responsibility for their work and accepts accountability for their decisions and teams from their mistakes. •Owning an issue until it is resolved including appropriate follow-up in a timely manner. •Whenever service failures occur with patients/customers/co-workers/physicians uses the HEART Service Recovery Model to remediate the issue (H=Hear the concern; E=Empathize with the customer; A=Apologize; R=Respond that will be addressed in a timely manner; T=Thank the person). •Maintaining focus on priorities and completing projects in a timely manner. Behaviors for Ratings 5, 4, 2, 1

**Rating by Laurie Jensen:**

Supervisor: 5.0 - Outstanding

**Supervisor Comments:**
Monica had to step up and go above and beyond normal duties to fill in for vacancy left by sr. consult. took on more work-load with great results for projects that impact the System.

**Rating by Monica J. Rogers:**

Employee: 4.0 - Exceeds Expectations

**Employee Comments:**
Assumed responsibility for ensuring that ALA, LA, PLI had successful kick-offs. Took responsibility for making changes in the academy curriculums when needed. Provided clearly follow-through on program issues as they arise. Always maintained focus and kept the main thing the main thing (HFHS University Academy programs).

- Acting decisively, following through on team commitments, and quickly correcting any problems.
- Following up on items beyond job duties or areas of knowledge, unprompted assistance.
- Assisting with resolving customer situations that may not fall within my scope of responsibility.

### Offer Open and Constructive Communications

Consistently Meets These Expectations by: •Demonstrating "Be Here Now", practicing open and honest communication and responding as a participant and supporter. •Anticipating and responding appropriately to customer communication needs. •Listening and communicating clearly, concisely, and respectfully to patients, customers, co-workers, and physicians. •Demonstrating constructive verbal, non-verbal, and written communication skills that enhance the work environment. •Receiving and valuing constructive feedback. •Sharing ideas, opinions, and feedback with leadership and co-workers appropriately (i.e., right time and right place). •Expressing reactions and opinions without intimidating others "assuming innocence". Behaviors for Ratings 5, 4, 2, 1

**Rating by Laurie Jensen:**

Supervisor: 4.0 - Exceeds Expectations

**Supervisor Comments:**
I agree with Monica. It is obvious that she has worked hard to model healthy communication which has been so important for us this year considering we have had to increase our productivity while working short-staffed. I look forward to her insightful feedback as we finalize our OD structure and strategic plan

**Rating by Monica J. Rogers:**

Employee: 4.0 - Exceeds Expectations

**Employee Comments:**
With my new job responsibilities I feel I have consistently been open and honest in my communication and have been a true partner by providing support anywhere needed. I have been listened to my customers and co-workers concerns and have consistently responded respectfully appropriately manner. Consistently provide constructive verbal, and non-verbal as well as written communications while ensuring proper timing. I have consistently been able to respond and express opinions without intimidating others.

- Practicing active listening and seeking constructive feedback from others.
- Utilizing feedback to achieve personal and organizational success.
- Providing others with access to information and keeping team members informed.
- Assisting others in "assuming innocence".

### Respond in a Timely Manner

Consistently Meets These Expectations by: •Responding courteously to patients, customers, co-workers, and physicians' needs and questions, and by providing information according to the department standards. •Informing patients, customers, co-workers, and physicians of service timeline and changes that may impact delivery of service. •Being flexible with their time and demonstrating a willingness to be responsive, by making themselves fully available to patients, customers, co-workers, and physicians. Following through on all inquiries, requests and complaints. •Handling multiple demands and competing priorities, making efficient use of their time. Behaviors for Ratings 5, 4, 2, 1

**Rating by Laurie Jensen:**

Supervisor: 4.0 - Exceeds Expectations

**Supervisor Comments:**
Monica did a great job as project manager for the LA and stepping up for ALA. Kept us on track

**Rating by Monica J. Rogers:**

Employee: 4.0 - Exceeds Expectations

**Employee Comments:**
- Responding before the due date, never has to be reminded of a deadline or deliverable • and

HF 00417

2012 Employee Performance Plan & Review for Monica J. Rogers                    Page 2 of 5

| and helped to remove barriers and kept our customers informed in a timely manner | often completes work ahead of time. • Anticipating customer/co-worker needs and responds efficiently to all requests and anticipates follow-up questions. • Removing barriers to provide quality and timely customer services. • Anticipating and informing patient/customer/etc of any potential barriers/delays. |

**Take Pride in the System**
Consistently Meets These Expectations by: •Adhering to established dress codes and takes accountability for their appearance. •Behaving like an owner of HFHS by taking accountability for its overall physical appearance. •Ensuring professional tone in their actions, and communications. •Taking pride in the work and fully accepting the responsibilities of the job. •Serving as an ambassador of Henry Ford Health System/BU, by living the values and taking pride in representing the System/BU through a positive manner; including being able to describe/demonstrate the System Standards of Excellence, Pillars, Vision and Mission with the community, including referring family and friends. Behaviors for Ratings 5, 4, 2...

**Rating by Laurie Jensen:**                                          Rating by Monica J. Rogers:
Supervisor: 4.0 - Exceeds Expectations                              Employee: 4.0 - Exceeds Expectations

**Supervisor Comments:**                                            **Employee Comments:**
Terrific ambassador for HFHS. Consummate professional.             • Exemplifying the Renewal principles in daily behavior.
                                                                    • Demonstrating strong knowledge of the HFHS' vision, mission and the performance pillars and their relationship to the department's work

**Respect and Be Sensitive to Privacy/Confidentiality**
Consistently Meets These Expectations by: •Respecting the need for privacy in all instances (e.g., hallways, elevators, etc.) and is sensitive to employee/patient privacy. •Maintaining confidentiality of all proprietary business and protected health information. •Maintaining and safeguarding the confidentiality of all HFHS files in accordance with HIPAA rules. •Completing and adhering to all mandatory HIPAA Privacy and Security training. Behaviors for Ratings 5, 4, 2...

**Rating by Laurie Jensen:**                                          Rating by Monica J. Rogers:
Supervisor: 3.0 - Meets Expectations                               Employee: 3.0 - Meets Expectations

**Supervisor Comments:**                                            **Employee Comments:**
agree - fully demonstrates the behaviors for this rating           No comments

**Contribute to Team Success**
Consistently Meets These Expectations by: •Contributing to a team atmosphere by listening to others, valuing opinions, sharing information, knowledge and resources with new and existing team members. •Discouraging the "us versus them" thinking. •Taking initiative and offers help to other team members as needed without being asked. •Developing and maintaining effective working relationship with co-workers. •Contributing their share to the teams' work by consistently delivering on their commitments. Behaviors for Ratings 5, 4, 2...

**Rating by Laurie Jensen:**                                          Rating by Monica J. Rogers:
Supervisor: 5.0 - Outstanding                                      Employee: 5.0 - Outstanding

**Supervisor Comments:**                                            **Employee Comments:**
Agree with Monica that she demonstrates the behaviors listed. Dependable team member who   • Providing consultative coaching and feedback to co-workers in a positive manner; which also
can be counted on for results. Collaborates regularly with other depts through training,   helps build confidence.
teambuilding and coaching. Has generously filled in for me at a moment's notice to do training or   • Encouraging cooperation, pride, and trust within group;
team coaching with a department and gets excellent feedback from our customers.            • Influencing others to achieve team goals; and interacts in ways that bring out the best in others.
                                                                    • Collaborating with other departments/business units, resulting in a better experience for internal and external customers.

**Honor and Respect Diversity**
Consistently Meets These Expectations by: •Being aware of tone of voice, body language and word choice and how it may be perceived by others. •Displaying sincerity by listening without judgment, and practicing patience and understanding, considering the "whole person". •Supporting an open and inclusive environment by appreciating similarities and differences. •Embracing the diversity of our customers, patients, and their families and providing their needs•Respecting the contributions and diversity of all people by being open to new ideas and perspectives. •Being sensitive to our health disparities and practicing healthcare equity. Behaviors for Ratings 5, 4, 2...

**Rating by Laurie Jensen:**                                          Rating by Monica J. Rogers:
Supervisor: 4.0 - Exceeds Expectations                             Employee: 3.0 - Meets Expectations

**Supervisor Comments:**                                            **Employee Comments:**
Monica exceeds expectations by seeking opportunities to increase awareness and knowledge of   No comments
diverse individuals and anticipating and providing the needs and expectations of our staff and
customers. Monica is thoughtful and uses her empathy strength to understand and support the
unique needs of others.

**Maintain a Clean and Safe Workplace Environment**
Consistently Meets These Expectations by: •Actively supporting and maintaining a safe workplace aligned with the established standards to ensure the safety of self, patients, co-workers and visitors. •Demonstrating knowledge of applicable health and safety regulations by complying with HFHS and department safety policies/procedures. •Speaking Up and Speaking Out to prevent any errors and reporting all identified risks, customer service violations or incidents and hazards. •Paying close attention to work environment and being conscientious about keeping it safe, clean, uncluttered and free of hazards. •Completing and/or attending required training and successfully applying and sharing knowledge gained to work environments. •Following safe working practices, obeying rules and regulations in a way that maintains safety, health & prevents injuries and illnesses. Behaviors for Ratings 5, 4, 2...

**Rating by Laurie Jensen:**                                          Rating by Monica J. Rogers:
Supervisor: 3.0 - Meets Expectations                               Employee: 3.0 - Meets Expectations

**Supervisor Comments:**                                            **Employee Comments:**
No comments                                                         No comments

**Foster and Support Innovation**
Consistently Meets These Expectations by: •Demonstrating knowledge of unit/department issues and objectives. •Providing innovative and additional ways to support HFHS and its customers •Suggesting new ideas for continuous improvement of the department/business unit. •Being open to and supporting new ideas, changes and new ways of doing things. Behaviors for Ratings 5, 4, 2...

**Rating by Laurie Jensen:**                                          Rating by Monica J. Rogers:
Supervisor: 4.0 - Exceeds Expectations                             Employee: 3.0 - Meets Expectations

**Supervisor Comments:**                                            **Employee Comments:**
Monica exceeds expectations by providing ongoing feedback and brainstorming ideas for   No comments
improvement. Using insights from her vast experience along with her creativity she helps to make
us better. In addition her leadership of Renewal is essential to managing change for the
organization and I look to her for insights to address culture assimilation during the merger with
Beaumont.

**Role Specific Assessment**

If using this section to assess clinical and/or non clinical job related skills:

1. Click the 'Add Competencies' button below to open the competency library.
2. Select the category specific to your role found in the 'jump to category section'.
3. Check the 'select all competencies' box in your category section.
4. Scroll up or down and click the box that says 'Add Selected Competencies'.

Your selected job related skills/competencies will then appear in your performance review form to be rated during your performance review. This section is not weighted.

**Role Specific Assessment Overall Comments**

| Managers Comments: | Employee Comments: |
| No comments | No comments |

HF 00418

2012 Employee Performance Plan & Review for Monica J. Rogers          Page 3 of 5

Performance Goal Plan

The Performance Goal Plan is a basic tool used to align an individual's goals with Department, Business Unit, and System goals and helps to manage performance throughout the year. Performance goals align to the System's performance pillars of People, Service, Quality & Safety, Growth, Research & Education, Community and Finance. This helps an individual understand how s/he contributes to System outcomes.

**Pillars: People**

**Goal : Engagement Goal:**
•Employees are expected to attend and participate in department discussions regarding engagement.
•Individually, employees are expected to have discussions with their leader regarding engagement (Examples being during mid-year reviews or regularly scheduled one-o-one meetings throughout the year)
•Employees drive engagement within their departments by volunteering to lead and/or participate in efforts to increase employee and customer engagement, communication, and teamwork within the department.

**Measurement : 5** - Employee helped lead engagement efforts in the department
4 - Employee actively participated in and contributed to engagement efforts within the department.
3 - Employee participated in required department meetings and discussions regarding team and individual employee engagement (examples include: goal setting, mid year review, annual review, team impact planning sessions, participation in impact plans).
2 - Employee was not present or did not contribute to employee engagement discussions within department
1 - Employee did not participate in or actively worked against engagement efforts in the department.

| Weight : 10.0% | Status : ___ | % Complete : 100.0% | Start : 01/01/2012 | Due : 12/31/2012 |

Action Items :
Actual Achievement :

Rating by Laurie Jensen:                                      Rating by Monica J. Rogers:
Supervisor: 5.0 - Outstanding                                 Emp_owner: 3.0 - Meets Expectations

Managers Comments:                                            Employees Comments:
Monica actively participated in impact planning and modeled engaged behavior that supported an   No comments
engaging work environment for the team.

**Pillars: People**

**Goal :** Conduct all requested/scheduled 2012 facilitation, consulting and coaching requests by 12/31/12.

**Measurement :** Complete 100% of request by 12/31/12
* Facilitate Renewal (6 classes)
* Facilitate Crucial Conversation
* Provide Coaching (Level of involvement TBD)
* Provide Consulting/Teambuilding assistance

| Weight : 20.0% | Status : ___ | % Complete : 100.0% | Start : 01/01/2012 | Due : 12/31/2012 |

Action Items :
Actual Achievement :

Rating by Laurie Jensen:                                      Rating by Monica J. Rogers:
Supervisor: 5.0 - Outstanding                                 Employee: 5.0 - Outstanding

Managers Comments:                                            Employees Comments:
Definitely outstanding as a role model for this work.         Completed 100% of all request by12/31/12. Facilitated all Renewal classes in 2012. Facilitated
                                                              Crucial Conversations. Provided coaching to CME office. Served as consultant to leadership
                                                              and provided teambuilding assistance.

**Pillars: No Longer Applicable**

**Goal :** Partner with Lead HFHS University Consultant to roll-out ALA Class II by 12/31/12

**Measurement :** * Partner with lead to identify all aspects of ALA program
* Ensure curriculum is aligned with Sr. Executive Competencies
* All sessions are complete (Agendas, Faculty confirmed, logistics confirmed and post session evals completed)
* Score cards completed and returned to the HFHS University by February 1, 2013
* Program evals submitted quarterly to CME office. Final evals to be submitted not later than December 1st.
* Assist Lead with updating curriculum

| Weight : 30.0% | Status : ___ | % Complete : 100.0% | Start : 01/01/2012 | Due : 12/31/2012 |

Action Items :

| Action | Resource Requirements | Accountability | Start Date | Finish Date |
|---|---|---|---|---|
| Complete and maintain project plan | Project Software | Weekly meetings with Angelene | 01/22/2012 | 12/01/2012 |
| Administer evaluations for each session | Access and training to Site Maker | Submission to CME quarterly | 01/22/2012 | 12/01/2012 |

Actual Achievement :

Rating by Laurie Jensen:                                      Rating by Monica J. Rogers:
Supervisor: 4.0 - Exceeds Expectations                        Employee: 4.0 - Exceeds Expectations

Managers Comments:                                            Employees Comments:
Exceeded expectations by stepping into a lead facilitator role when Chris left in October   Partnered with lead to identify all aspects of ALA program. Partnered with lead to ensure
                                                              curriculum is aligned with competencies. Calibrated curriculum where necessary. All programs
                                                              sessions completed as scheduled.

**Pillars: No Longer Applicable**

**Goal :** Provide support as needed with the roll-out and transanence of FLI Class II 12/31/12.

**Measurement :** Completion of the 6 identified sessions by 12/31/2012

| Weight : 5.0% | Status : ___ | % Complete : 100.0% | Start : 01/01/2012 | Due : 12/31/2012 |

Action Items :

| Action | Resource Requirements | Accountability | Start Date | Finish Date |
|---|---|---|---|---|
| Finalize agenda | | Complete prior to session | 01/22/2012 | 12/31/2012 |
| Print material provided by faculty | | Complete prior to session | 01/22/2012 | 12/31/2012 |
| Complete customized evaluations with CME office | CME Staff | Complete prior to session (requires programing changes) | 01/22/2012 | 12/31/2012 |

Actual Achievement :

Rating by Laurie Jensen:                                      Rating by Monica J. Rogers:
Supervisor: 3.0 - Meets Expectation                           Employee: 3.0 - Meets Expectation

Managers Comments:                                            Employees Comments:
agree with monica                                             No comments

**Pillars: No Longer Applicable**

**Goal :** Develop and implement executive education opportunities.

**Measurement :** * Assist with maintaining/updating web pages
* Assist with rolling out interview simulation opportunity to all of LEAP
* Assist with the development of promotional collateral
* Assist with creating the HFHS Academy brand

| Weight : 5.0% | Status : ___ | % Complete : 100.0% | Start : 01/01/2012 | Due : 12/31/2012 |

Action Items :
Actual Achievement :

Rating by Laurie Jensen:                                      Rating by Monica J. Rogers:
Supervisor: 3.0 - Meets Expectations                          Employee: 3.0 - Meets Expectations

Managers Comments:                                            Employees Comments:
No comments                                                   No comments

**Pillars: No Longer Applicable**

**Measurement :** * Identify all aspects LA
* Ensure curriculum is aligned with Leadership Competencies
* All sessions are complete (Agendas, Faculty confirmed, logistics confirmed and post session evals

HF 00419

2012 Employee Performance Plan & Review for Monica J. Rogers                        Page 4 of 5

---

| Goal : Rollout 2012-2013 Leadership Academy (LA) Program | completed).<br>* Program evals submitted quarterly to CNE office. Final evals to be submitted not later than December 1st.<br>* Update curriculum |
|---|---|

**Weight : 30.0%**     **Status :** [ ]     **% Complete : 100.0%**     **Start : 01/01/2012**     **Due : 12/31/2012**

**Action Items :**
**Actual Achievement :**
**Rating by Laurie Jensen:**                            Rating by Monica J. Rogers:
Supervisor 5.0 - Outstanding                            Employee: 5.0 - Outstanding
**Managers Comments:**                                 **Employee Comments:**
Thank you Monica for your outstanding leadership for the Leadership Academy 2012-2013.   Lead on the roll out of Leadership Academy. Ensures curriculum is aligned with HFHS Leadership Competencies. Agendas, faculty, logistics and post evaluations completed. Program evals submitted to CNE the next day after each session. Curriculum updated as needed.

---

The Individual Development Plan includes identifying competency areas (i.e. HFHS Leadership competencies, etc.) to develop and then identifying activities (i.e. HFHS University courses, stretch assignments, etc.) to address each of the areas.

Click following link to access HFHS University content: HFHS University

**Category:**
**Developmental Goal Description** : Obtain coaching certification and/or MBTI qualified status          **Measurement** : Coaching certification MBTI qualified status
**Action Items :**

**Managers Comments:**                                 **Employee Comments:**
No comments                                            Certifications not obtained due to budget and restructuring of department.

---

Manager and employee meet to review employee progress on business and development goals and document the date and results of this discussion in the 'Comments' section provided.
Mid-Year Review Meeting Held on: 06/21/2012

Please check this box to indicate that the employee has completed all Business Unit/Department specific annual competencies, if applicable.

Please check this box to indicate that the employee has completed all Population Served competencies, if applicable.

Annual Mandatory Education (met on HFHS University):

This employee has successfully completed annual requirements.

Other Training/Certification

Licensure Expiration Date

Health Screen Date

---

Overall Performance Summary
Use this section to summarize the employee's overall performance during the review period. As you finalize ratings be on the lookout for these common rating errors.

|  | Overall Performance Rating 4.3 / 5.0 | |
|---|---|---|
|  | **Rating** | **Weights** |
| Team Member Standards of Excellence | 4.0 / 5.0 | 40.0% |
| Display a Positive Attitude | 4.0 - Exceeds Expectations | |
| Take Ownership and Be Accountable | 5.0 - Outstanding | |
| Offer Open and Constructive Communication | 4.0 - Exceeds Expectations | |
| Respond in a Timely Manner | 4.0 - Exceeds Expectations | |
| Take Pride in the System | 4.0 - Exceeds Expectations | |
| Respect and Be Sensitive to Privacy/Confidentiality | 3.0 - Meets Expectations | |
| Commit to Team Members | 5.0 - Outstanding | |
| Honor and Respect Diversity | 4.0 - Exceeds Expectations | |
| Maintain a Clean and Safe Workplace Environment | 3.0 - Meets Expectations | |
| Foster and Support Innovation | 4.0 - Exceeds Expectations | |
| Role Specific Assessment | unrated | 0.0% |
| Performance Goal Plan | 4.5 / 5.0 | 60.0% |
| Engagement Goals: sEmployees are expected to attend and participate in department discussion regarding engagement + roter ... Accordingly, employees are expected to: . ...; participate in discussions with their leader regarding engagement (f.a.evals) being during mid-year review on regularly scheduled one-on-one meetings throughout the year; sEmployees drive engagement within their departments by volunteering to lead and/or participate in efforts to increase employee and customer engagement, communication, and teamwork within the department. | 5.0 - Outstanding | 10.0% |
| Conduct all requested/scheduled 2012 facilitation, consulting and coaching requests by 12/31/12. | 5.0 - Outstanding | 20.0% |
| Partner with Lead HFHS University Consultant to roll out LA Class ... by 12/31/12. | 4.0 - Exceeds Expectations | 10.0% |
| Provide support as needed with the roll out and enhancement of PCI Class II 12/31/12. | 3.0 - Meets Expectations | 5.0% |
| Develop and implement executive education opportunities. | 3.0 - Meets Expectations | 5.0% |
| Rollout 2012-2013 Leadership Academy (LA) Program | 5.0 - Outstanding | 30.0% |

Overall Comments
Comments by Laurie Jensen:
Monica had an outstanding year. She stepped up and took initiative and went above and beyond the call of duty to make sure the ALA and LA were supported and quality maintained during period where our team was short staffed. The collective success of our GMIO goals this year would not have been possible without our efforts. Thank you Monica. -Laurie

Signatures

2012 Employee Performance Plan & Review for Monica J. Rogers                    Page 5 of 5

Employee signature does not imply agreement or disagreement, only the acknowledgement that the discussion occurred.

Employee: _____    01/16/2013
           Monica J. Rogers
Manager:  _____    01/16/2013
           Laurie Jensen

HF 00421

*From 2013 Journal*

Conway/Monica

- Dr Conway
- PdS — early 201
- organizational performance —
  Baldrige
☆ Monica R. 1-9

Met c̄ Monica to give 2012 performance review. I explained she had an outstanding year & that I was very grateful for the work she did, especially having to step up & help fill in for the gap left by Chris Lott's departure. She was very pleased c̄ her evaluation but appeared reserved & somewhat somber which is usually a foreshadowing of her moving into some very disengaged & unhealthy behavior. I challenged her that I know something is wrong & that I couldn't help her unless she was willing to talk about it but she didn't have to. She confided that she feels she is doing Sr. consultant work. I told her I don't think she is but I do agree she really jumped in to help fill the gap when Chris left & did a great job while we were so short staffed & that is a lot of reason I gave her 5's & 4's on eval. I said that I feel like this comes in cycles with her & I feel like there is some deep rooted source to her repeated coming back to issue of title. Reminded her that we are working on updating job descriptions so everyone feels clear of what expected but we also want to provide growth opportunities for those who want. Told her I want her to feel engaged & committed to doing that. Asked if she would like to meet c̄ Sam to see if I am missing something & she agreed. We hugged & I said I'd set it up.

HF 00363

| Name | Current Job Title | Job Description Number | Education/ Experience | Race | Promotion Date | Do they currently meet the education/ experience requirements of JD | At time of promotion: did the employee meet the education/ experience requirements of JD | JD Date |
|---|---|---|---|---|---|---|---|---|
| Brian Robertson | Consultant, OHRD | F02107 | Some College | White | Promoted from Training Analyst Info Services to Consultant OHRD 12/31/2010 | No Bachelor's required 3 years' work experience (meets experience requirements) | No - Brian's position was restructured from a Training Analyst position in Technical Education Services to Consultant in Organizational Human Resources Development due to the reorganization of the departments. No job posting. | 02/2007 |
| Patti Sanburn | Director HR CCS | L00910 | HS Graduate | White | Promoted from Mgr HR to Dir HR 9/16/2007 | Yes Bachelor's required or min of 8 years of experience as HR Mgr | Yes. No job posting. Career progression. | 10/2007 |
| Carol Bridges | Director Service Exc and Volunteer Services | W00074 | HS Graduate | White | Promoted due to job expansion. Was Dir Vol Serv but obtained additional dept: Serv Excellence 9/11/2011 | No Bachelor's required Master's preferred (meets experience requirements) | Yes, at the time of her promotion she was the Dir of Volunteers Wyandotte, since then her job title has changed because she was asked to supervise an additional department. No job posting. | n/a |
| Tara Boufford | e-HR Analyst | F05818 | 2 year College Degree | White | Promoted from Employee Services Rep to E-HR Analyst 8/14/2011 | Yes Bachelors required or experience considered in lieu of education requirement (meets experience requirements) | Yes | Job Req 63053 |
| Nicole Logan | Sr. Compensation Consultant | F02704 | Bachelor's Degree | White | Promoted from Sr. Rep to Sr. Consultant OHRD 8/1/2010 | Yes Bachelors required Masters preferred 3-5 years comp/benefits admin experience | Yes. No job posting. Career progression. | |
| Debra Temrowski | HR Director | L08284 | Bachelor's Degree | White | Promoted from HR Business Partner to HR Director 11/18/2012 | Yes Bachelor's required Master's preferred 7 years exp 1 year leadership | Yes | Job Req 72959 |

ATTACHMENT N

HF 00449