**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MONICA J. ROGERS

        Plaintiff,

v.

HENRY FORD HEALTH SYSTEM,
a Michigan corporation,

        Defendants.

CASE NO. 2:15-cv-12312

HON. MARIANNE O. BATTANI

_____/

**AMENDED OPINION AND ORDER GRANTING DEFENDANT HENRY FORD**
**HEALTH SYSTEM'S MOTION FOR SUMMARY JUDGMENT**

**I.      INTRODUCTION**

This matter is before the Court on Defendant Henry Ford Health System's Motion for

Summary Judgment.  (Doc. 48).  Plaintiff's Complaint advances claims for race

discrimination and retaliation under 42 U.S.C.  1981, Title VII of the Civil Rights Act of

1964, and the Elliott-Larsen Civil Rights Act ("ELCRA") based on Defendant's alleged

failure to promote and reassignment of Plaintiff. (Doc. 1).  Plaintiff also advances an

additional claim under ELCRA for age discrimination.  (Doc. 1).  Defendant asserts that

it is entitled to summary judgment because its decision not to promote Plaintiff was

based on legitimate, non-discriminatory factors.  (Doc. 48).  In response, Plaintiff

contends that the evidence supports its position that Defendant impermissibly based its

decision on race and age-related factors.  For the following reasons, the Court

**GRANTS** Defendant's motion.

**II.      STATEMENT OF FACTS**

Plaintiff, Monica Rogers, is an employee of Defendant, Henry Ford Health System (HFHS or Defendant). Rogers is a 63-year old, African-American female. She does not have a Bachelor's Degree or a Master's Degree and has worked for HFHS for 35 years, beginning her employment in October 1981. Between 1983 – 1991, Rogers held a number of positions in Human Resources. In 1991, she became a "Senior Representative, Organizational Development." The position did not require a college degree. On April 30, 2007, she was given a position in the Organizational Human Resources Development (OHRD) department with a title of "OHRD Consultant." While this new position required a Bachelor's Degree, Rogers was grandfathered into the position without having a degree.

The OHRD Department provides various types of training programs and courses for HFHS employees, from new employee orientation, to leadership courses. As an OHRD Consultant, Rogers was responsible for conducting training assessments and implementing specific training and development programs to meet assessed needs.

At the time Plaintiff became an OHRD Consultant, Laurie Jenson was the Director of the OHRD Department. Rogers initially reported to Jenson, until 2009 when she began reporting to Monica Jackson-Lewis, and then Barbra Bressack in February 2013. Both Jackson-Lewis and Bressack reported to Jensen. Between 2008 – 2012, Rogers received uniformly positive performance evaluations

The OHRD Department also consisted of "Senior OHRD Consultants." A Master's Degree was required for the position of Senior OHRD Consultant. A Senior OHRD Consultant is involved in project management and works with HFHS leaders to bridge the gap between the strategic vision and the organization's current performance

2

and culture.  Caucasian and African American employees held Senior OHRD Consultant positions.

When Rogers began reporting to Jackson-Lewis, Defendant alleges that Plaintiff became so disruptive and insubordinate that in July 2010, Jackson-Lewis referred her to HFHS's Employee Assistance Program (EAP).   Between December 2012 and January 2013, Rogers formed an opinion that she should be promoted to a Senior OHRD Consultant.  This opinion was grounded in a belief that she was performing functions that a Senior OHRD Consultant would typically perform, including leading "two or more system level projects."

On January 23, 2013, Rogers, Jensen, and Jan Harrington-Davis, Director of Employee and Labor Relations, Workforce Diversity and Compliance, met to discuss Rogers belief that she should be promoted.  Harrington-Davis spoke to Rogers and Jensen and reviewed the Senior OHRD Consultant job description.  She and Jensen both agreed that Rogers did not qualify for a promotion.  Harrington-Davis informed Rogers that the only way she could obtain the promotion would be to obtain a Master's Degree and qualify for the position, or if the department were to revise the job description in terms of job duties and educational requirements.

On March 25, 2013 Rogers submitted a written complaint to Derick Adams, Vice President, Human Resources for Health Alliance Plan (Health Alliance Plan, (HAP), is a wholly owned subsidiary of HFHS).  She claimed she had been subjected to "discrimination/harassment by Laurie Jensen."  She claimed she should be promoted to Senior OHRD Consultant and that there were six "white counterparts" who received

promotions without a degree, or after the job descriptions had been modified to reflect their lack of an advanced degree or lack of experience.

Adams assigned Dan Champney, Deputy General Counsel for HAP, to investigate. Champney's investigation included interviewing Rogers, Jensen, Bressack, Harrington-Davis, and Jackson-Lewis. Champney also reviewed various versions of the job descriptions, Rogers' performance evaluations, Jensen's journal entries, and "other documents." Champney concluded Rogers had not been subjected to harassment.

In July 2013, Rogers filed an EEOC charge, claiming race discrimination and retaliation. Following the conclusion of Champney's investigation, a number of employees allegedly reported to Jensen that Rogers had exhibited erratic behavior or made threating statements. These included:

> o A co-worker telling Jensen that Rogers had taken a baseball bat and smashed a car window of a woman who Rogers thought was having an affair with her husband. This co-worker expressed fear that Rogers could "go postal" and that "she was crazy." Adding that he heard Rogers say that she hated "that bitch [Jensen] so much [Rogers] could just fight her in the parking lot."
>
> o Another co-worker told Jensen that she wanted to stay away from Rogers because she had heard from other employees that Rogers had been engaging in strange behavior.

Rogers had also told Bressack that Jensen was a liar and that the truth would come out, and justice would be served. Bressack found this unsettled and reported it to Jensen. Jensen reported these concerns to her supervisor, Kathy Oswald, Senior Vice President

4

and Chief Human Resource Officer for HFHS.  Jensen also reported them to Adams, who testified that Jensen was concerned for her personal safety.

Rogers alleges that all of these statements were either lies or exaggerations, taken out of context, designed to get rid of her.  She claims that this was not the first time Jensen had lied and documented her lie, citing an example from January 2009, when Jenson wrote that Rita Fields, a Vice President at the company, stated that Rogers behavior was somewhat bizarre.  Rogers states that when Fields was confronted with the document, Fields stated that it was inaccurate as it relates to anything she allegedly said.

In light of the reports to Adams, he referred Rogers to EAP for a fitness for duty exam.  On September 11, 2013, she was placed on a paid suspension and told that concerns were raised about her being a danger to herself and others.

On September 20, 2013, she was seen by a physician who cleared her to return to work but recommended she follow up with EAP.  Adams contacted Rogers, informing her that she was cleared to return to work.  Adams set up a meeting for himself, Rogers, and Harrington-Davis which took place on October 2, 2013.  At this meeting, Defendant alleges that Rogers was presented three options for her return: she could return to her position in OHRD; move into an HR Business Partner position at HAP; or accept a severance option.  Rogers alleges that she was only presented with the option to accept a settlement, or take the Business Partner position.

Rogers opted for the Business Partner position, which she currently holds, and reports directly to Adams.  Her salary did not change as a result of the change in position, and she has received salary increases since taking this position.

## I.    STANDARD OF REVIEW

Summary judgment is appropriately rendered "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." State Farm Fire & Cas. Co. v. McGowan, 421 F.3d 433, 436 (6th Cir. 2005) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). That is, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the Plaintiff.'" Brown v. Scott, 329 F. Supp. 2d 905, 910 (6th Cir. 2004). In order to fulfill this burden, the non-moving party need only demonstrate the minimal standard that a jury could ostensibly find in his favor. Anderson, 477 U.S. at 248; McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000). However, mere allegations or denials in the non-movant's

6

pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party.  Anderson, 477 U.S. at 248, 251.

## II.    DISCUSSION

### A.  Failure to Promote/Reclassify

Plaintiff's complaint alleges discrimination by way of a failure to promote.  In Plaintiff's response to Defendant's motion for summary judgment, she replaces any allegations of a failure to promote, with a failure to reclassify.  Defendant takes issue with this change, reasoning that Plaintiff had not previously pled such a claim.

Issues raised for the first time in a plaintiff's response to a motion for summary judgment may be considered a request to amend the complaint, pursuant to Fed.R.Civ. P. 15. See generally, Evans v. McDonald's Corp., 936 F.2d 1087, 1090–91 (10th Cir.1991) (a plaintiff should not be prevented from pursuing a valid claim just because he did not include it in his complaint, provided that a late shift in the case will not prejudice the other party in maintaining his defense). See also, United States ex rel. Schumer v. Hughes Aircraft Company, 63 F.3d 1512, 1524 (9th Cir.1995) ("when a party raises a claim in materials filed in opposition to a motion for summary judgment, the district court should treat the filing as a request to amend the pleadings and should consider whether the evidence presented creates a triable issue of material fact."), vacated on other grounds, Hughes Aircraft Company v. United States ex rel. Schumer, 520 U.S. 939 (1997); Viernow v. Euripides Dev. Corp., 157 F.3d 785, 798 (10th Cir. 1998).  The Court notes that the standards for a claim of failure to promote and failure to reclassify appear to be the same.  See Russell v. Ohio, Dep't of Admin. Servs., 302 F.

App'x 386, 391 (6th Cir. 2008).  In light of this, and because this claim has been fully briefed by both sides, the Court will consider the failure to reclassify claim.

Discrimination claims brought pursuant to Title VII, 1981, and ELCRA are analyzed under the same standards.  See, e.g., McKinley v. Skyline Chili, Inc., 534 F. App'x 461, 467 (6th Cir. 2013); Jackson v Quanex Corp.  191 F.3d 658 (6th Cir. 1999); Pena v. Ingham County. Rd. Comm'n, 255 Mich. App. 299, 660 N.W.2d 351, 358 n.3 (Mich. Ct. App. 2003).  A plaintiff must proffer either direct or circumstantial evidence of discrimination.  DiCarlo v. Potter, 358 F.3d 408, 414 (6th Cir. 2004).  Absent direct evidence of discriminatory intent, a plaintiff may rely on circumstantial evidence by raising an inference of discrimination pursuant to the burden-shifting standard set forth in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973).  Abdulnour v. Campbell Soup Supply Co., LLC, 502 F.3d 496, 501 (6th Cir. 2007).

Rogers carries the initial burden of establishing a prima facie case of race discrimination.  DiCarlo 358 F.3d at 414.  If she can satisfy this burden, it then shifts to HFHS to articulate a legitimate, non-discriminatory reason for the adverse employment action.  Id.  Finally, should HFHS carry this burden, Rogers must then prove, by a preponderance of the evidence, that the legitimate reasons offered by HFHS were not its true reasons, but were a pretext for discrimination.  Id. at 414–15.

In order to establish a *prima facie* case of racial discrimination based upon a failure to promote, Rogers must demonstrate that: 1) she is a member of the protected class; 2) she applied for and was qualified for a promotion; 3) she was considered for and was denied the promotion; and 4) other employees of similar qualifications who were not members of the protected class received promotions at the time her request

for promotion was denied.  Nguyen v. City of Cleveland, 229 F.3d 559, 562-63 (6th Cir.

2000).

Defendant concedes that Rogers is a member of the protected class.  Rogers

must still demonstrate that there was an open position, that she was qualified for a

promotion/reclassification, and that she was treated differently than similarly situated

employees, who were not members of the protected class.

The position in question, Senior OHRD Consultant, requires a Master's Degree.

Rogers concedes that she does not have a Master's Degree.  She argues however, that

at least six white counterparts were reclassified, unqualified, and did not hold the

necessary degrees.  She also argues that she was performing functions that a Senior

OHRD Consultant would typically perform, and therefore was qualified.

Rogers fails to substantiate her arguments with evidence.  The evidence

presented, pertaining to the six white counterparts, shows that at least a few of them

were promoted and not reclassified.  A promoted position required a posted opening,

along with an application and selection process.  Further, all but one of the six have the

required degrees.  In the once instance where the individual identified did not have a

degree, that individual satisfied the exemption that the position had, where a certain

number of years of experience would be accepted in lieu of the degree.  For the position

of Senior OHRD Consultant, there is no exemption for the Master's Degree

requirement, regardless of years if experience.

While a factual dispute remains as to whether Rogers was performing functions

similar to that of a Senior OHRD Consultant, it is irrelevant as a matter of law.  See

McDonald v. Union Camp Corp., 898 F.2d 1155, 1160 (6th Cir. 1990) (employee's

9

disagreement with employer's evaluation does not raise material issue of fact).  Even assuming arguendo, that Rogers did in fact perform tasks typically assigned to a Senior OHRD Consultant, it does not establish qualification.  Taking into consideration that Defendant has other positions with experience exemptions in lieu of a degree, the fact that a Senior OHRD Consultant position does not have this exemption is telling, as to the Defendant's intentions for this role.  Absent evidence of Defendant reclassifying someone without the required qualifications, Plaintiff, without a Master's Degree, cannot establish she was qualified for the position of Senior OHRD Consultant.

Because Plaintiff cannot demonstrate to the Court that she is qualified for the position, as a matter of law, her claim must fail.  See Johnson v. Metro. Gov't of Nashville and Davidson County, Tenn., 502 F. App'x. 523 (6th Cir. 2012) (Plaintiffs could not show they were similarly situated to promoted candidates because they did not have "similar qualifications"); see also Russell, 302 F. App'x. at 390-92 (6th Cir. 2008) (court granted summary judgment because Plaintiff failed to show failure to reclassify was based on race "because she has not identified any similarly situated non-minority employees who were treated differently").

Regarding Rogers age discrimination claim, Rogers has failed to defend this claim and the Court therefore deems it waived.  "[I]t is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." United States v. Johnson, 440 F.3d 832, 846 (6th Cir. 2006) (quoting United States v. Elder, 90 F.3d 1110, 1118 (6th Cir.1996)).

**B.  Retaliation**

10

The same burden-shifting standard set forth in <u>McDonnell</u> applies here.  Rogers carries the initial burden of establishing a prima facie case of race discrimination. <u>DiCarlo</u> 358 F.3d at 414.  If this burden is met, it shifts to HFHS to articulate a legitimate, non-discriminatory reason for the adverse employment action.  <u>Id</u>.  Finally, should HFHS carry this burden, Rogers must then prove by a preponderance of the evidence that the legitimate reasons offered by HFHS were not its true reasons, but were a pretext for discrimination.  <u>Id.</u>  at 414–15.

The difference for a retaliation claim however, is in the factors required to establish a prima facie case.  To make out a prima facie case of race discrimination, Rogers must establish that: 1) she is a member of the protected class; 2) she was subject to an adverse employment action; 3) she was qualified for the position; and 4) a comparable non-protected person was treated better.  <u>Mitchell v. Toledo Hosp</u>., 964 F.2d 577, 582 (6th Cir. 1992).

Rogers' brief largely fails to make the arguments necessary to meet her burden, and it is not the role of the District Court to speculate on which portion of the record she relies on.  <u>Guarino v. Brookfield Twp. Trustees</u>, 980 F.2d 399, 404 n. 5 (6th Cir. 1992) ("A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim ...").  That being said, Plaintiff's decipherable argument here revolves around the question of whether an adverse employment action took place.

**Adverse Employment Action**

11

An adverse employment action is defined as a "materially adverse change in the terms or conditions" of employment.  Kocsis v. Multi-Care Mgmt., Inc., 97 F.3d 876, 885 (6th Cir. 1996).  An adverse action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits," and it typically "inflicts direct economic harm." Ellerth, 524 U.S. at 761-62.  "When determining if an adverse employment action exists, courts must keep in mind the fact that workplaces are rarely idyllic .  .  .  that an employee is displeased by an employer's act or omission does not elevate the act or omission to the level of a materially adverse employment action." Cole v. Dep't of Corr., 2006 WL 2613458, at *2 (Mich. Ct. App. Sept. 12, 2006).

Rogers alleges the following adverse employment actions: she was not invited to attend a merger team meeting, she was referred to EAP, and she was transferred to the HAP Business Partner position.

Around December 2012, Plaintiff alleges she had a meeting with Harrington-Davis and Jenson, during which a discussion of a possible merger between Defendant and Beaumont took place.  Rogers alleges that she was told she would be part of a "merger team" meeting and was then later uninvited.  There is no dispute that the merger team meeting that ended up taking place, (also referred to as the "culture" meeting) was only attended by Jensen and another OHRD Director, Amy Schultz, Director of HR Strategies and Consulting.  Rogers has not provided any evidence to support her assertion that she was ever supposed to attend the meeting, let alone that she was uninvited to the meeting and that such an exclusion was made discriminatorily.  Move over, Courts have routinely held that exclusion from meetings is not an adverse

12

employment action.  See Finley v. Trotwood, 503 F. App'x. 449, 454 (6th Cir. 2012) ("district correctly decided that exclusion from meetings [is not] a materially adverse action under state or federal law"); Watson v. City of Cleveland, 202 F. App'x. 844, 855 (6th Cir. 2006) (removal from two investigations, exclusion from some meetings, and denial of raise did not constitute adverse employment actions).

In July 2013, Rogers filed her EEOC complaint.  In September 2013, she was referral to EAP and suspended with pay, pending a fitness for duty evaluation.  Rogers argues that her EAP referral was in retaliation for her filing of her EEOC complaint, and should therefore be considered an adverse employment action.  A referral to EAP for a fitness for duty exam does not, on its face, establish an adverse employment action.  In Choulagh v. Holder, No.  10–14279, 2012 WL 2891188, at *7 (E.D. Mich. July 16, 2012), aff'd, 528 F. App'x. 432 (6th Cir. 2013), the court noted that an EAP referral "cannot be viewed as an adverse employment action nor is it sufficient evidence of severe or pervasive retaliatory harassment by a supervisor." Id.  In Stone v. Bd. of Directors of Tennessee Valley Auth., 35 F. App'x. 193, 196 (6th Cir. 2002), the Sixth Circuit affirmed the grant of summary judgment in a retaliation case since "[t]here was no evidence that the fitness examination affected the terms and conditions of Plaintiff's employment." Stone, 35 F. App'x. at 199.

Although referral to EAP does not establish adverse employment action, and although Rogers has not alleged that the referral itself resulted in a significant change in her employment status, the Court does note the timing of the referral to EAP, occurring shortly after Plaintiff filed an EEOC complaint.  As such, the Court will grant leeway in considering this an adverse employment action.  This then shifts the burden to

Defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action.

Defendant documented statements from Rogers' supervisors and peers that suggested she might be unstable and caused others around her to be fearful or uncomfortable. Defendant, believing Rogers might pose a danger to herself or others, therefore referred her to EAP for a fitness for duty evaluation. With this being made clear through the evidence, Defendant has satisfied its burden, returning it to Rogers.

Rogers must prove by a preponderance of the evidence that the legitimate reason offered by the Defendant was not its true reason, but rather was a pretext for discrimination. The only evidence Plaintiff presents, in an attempt to undermine the credibility of Defendant's reasoning, is a form titled "Behavioral Observations Checklist and Fitness for Duty Evaluation." Rogers' colleague Patrick Payne prepared the specific form that she directs the Court to. Payne had made statements indicating he was fearful of Rogers. This form indicated that Rogers demeanor was cooperative, polite, and calm. (Doc. 55-4). Rogers asserts that this evidence that Payne never made the statements about her that Defendant alleges, and that this is further evidence of a scheme, grounded in discrimination. The problem with this however, is it both mischaracterizes Payne's form, and disregards his testimony.

The form in question is a standard template form, which is essentially a checklist. It was sent to employees on the day that Rogers was placed on leave for the purpose of assuring that HFHS was providing "adequate guidance to the medical professions." (Doc. 56-16). The instructions given to employees was to "complete the attached checklist based on [their] recent observations of [Rogers] prior to the leave." Id. In the

column where Payne checked off "cooperative," "polite," and "calm," the only alternative options included: "sleepy," "crying," "talkative," "sarcastic," "excited," and "no issue." (Doc. 55-4). Additionally, the comments Payne provided on the form lend support to Defendant's reasoning. His comments read:

> "I'm not sure if you would classify this as delusion, but [Rogers] feels she's treated differently and has different rules just for her. She feels that rules set upon her are more restricted than other team members. She's has [sic] expressed she's required to be more productive and held to a higher standard than others."

Id. Payne's testimony also supports Defendant's claims. He testified that, among other things, he told Jenson that he thought Rogers was "probably crazy." (Doc. 55-3). Because Defendant has provided legitimate reasons to support a referral to EAP, and because the Court finds that Rogers has not proven by a preponderance of evidence that Defendant's legitimate reasons were not true, let alone a pretext for discrimination, this claim must fail.

Plaintiff's last claim of adverse employment action involves her transfer to the HAP Business Partner position. She and Defendant provide differing accounts on whether she was offered the opportunity to return to her previous position upon return from her leave. Rogers claims that her only options were to accept a severance, or the HAP Business Partner position. Defendant claims a third option existed, in which it offered Rogers the opportunity to return to her previous position. In any event, Defendant argues that the position Rogers ended up accepting was a lateral move. The position carried with it the same pay and benefits, and has even included merit raises since she has moved to that role.

Plaintiff's response brief does not appear to dispute that this transfer was a lateral move.  Moreover, she does not allege that the position was a demotion, or even a less significant title or function.  Therefore, in determining if the transfer to the HAP Business Partnership position constituted an adverse employment action, the Court will review the position as a lateral move.  The Sixth Circuit has held that a lateral move is not an adverse employment action, provided the conditions are not objectively intolerable to a reasonable person.  Kauffman v. Kent State Univ., 21 F.3d 428 (6th Cir. 1994).  Rogers has not made any assertions to suggest that the HAP Business Partnership position is objectively intolerable.

## V.      CONCLUSION

For the foregoing reasons, Plaintiff has failed to meet her burden necessary under the law.  The Court therefore **GRANTS** Defendant's Motion for Summary Judgment.

**IT IS SO ORDERED.**

Date:   February 13, 2017                          s/Marianne O. Battani
                                                   MARIANNE O. BATTANI
                                                   United States District Judge

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on March 1, 2017.

                                                   s/ Kay Doaks
                                                   Case Manager